# EXHIBIT A

*Execution Version*

## SETTLEMENT AGREEMENT & RELEASE

This Settlement Agreement & Release ("Agreement") is entered into between William Evans ("Plaintiff") and WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC ("Defendant"). Plaintiff and Defendant are each referred to individually as a "Party" and collectively as the "Parties."

**WHEREAS**, Plaintiff filed a lawsuit against Defendant in the United States District Court for Colorado, styled *William Evans, Individually and on Behalf of All Others Similarly Situated v. Felix Energy Holdings II, LLC*; Civil Action No. 1:19-cv-02204-RBJ (the "Lawsuit"), wherein Plaintiff claimed Defendant did not pay him, or similarly situated workers, overtime wages they were owed in alleged violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA");

**WHEREAS**, Defendant denies and continues to deny all claims by Plaintiff in the Lawsuit;

**WHEREAS**, the Parties, through their respective attorneys, have engaged in fact investigation in the Lawsuit and exchanged relevant documents, and concluded that it is in their mutual best interests to negotiate a settlement and compromise of the disputed issues, including without limitation Defendant's liability, if any, the number of hours worked per week by Plaintiff for Defendant, if any, the amount of compensation due to Plaintiff, if any, Plaintiff's status as an employee or independent contractor of Defendant, Plaintiff's exempt status, if any, the applicable statute of limitations, the applicable methodology for calculating potential overtime wage damages and other issues related to the claims in this Lawsuit, without Defendant admitting any liability of any kind or nature whatsoever; and

**WHEREAS**, as a result of such negotiations, the undersigned Parties have each determined independently, and after consultation with counsel of their respective choice, that it is desirable and beneficial for each of them to settle, compromise and resolve all claims and disputes in the Lawsuit in the manner and on the terms and conditions set forth herein.

**NOW, THEREFORE**, Plaintiff and Defendant hereby agree as follows:

1. **Settlement Amount.**

   a.    In consideration for the promises made by and to Plaintiff in this Agreement, Defendant agrees to pay the total gross settlement amount of Nineteen Thousand Four Hundred and Thirty-Three Dollars and Ninety-Four Cents ($19,433.94) (the "Settlement Amount") to Plaintiff and his attorneys as set forth below. The Settlement Amount shall be distributed as follows:

   i.    Ten Thousand Eight Hundred and Forty-Two Dollars and Sixty-One Cents ($10,842.61) in a check made payable to Plaintiff. An IRS Form 1099 will be issued to Plaintiff in the normal course of business.

1

*Execution Version*

      ii.      Eight Thousand Five Hundred and Ninety-One Dollars and Thirty-Two Cents ($8,591.32) in a check made payable to Josephson Dunlap LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046 (EIN 82-5208727) representing the sum total of all attorneys' fees and costs to be paid for Plaintiff's attorneys' fees and costs of court in the Lawsuit. IRS Forms 1099 will be issued to the Josephson Dunlap LLP and to Plaintiff for this amount in the normal course of business.

      b.      Plaintiff agrees to be fully responsible for any and all respective taxes on the payments set forth in Section 1 of this Agreement. Plaintiff acknowledges that he has received, or may seek, independent legal advice concerning the taxability of the Settlement Amount, and that Plaintiff has not relied upon any advice from Defendant and/or its attorneys as to the allocation of the Settlement Amount for tax or any other purposes, or regarding tax withholding or the ultimate taxability of the Settlement Amount, whether pursuant to federal, state or local income tax statutes or otherwise. Plaintiff agrees to release, defend, indemnify, and hold harmless Defendant and the other Released Parties (as defined below) for any taxes or tax penalties for which the Plaintiff may be liable regarding the payment made to Plaintiff under this Agreement. Plaintiff agrees that neither Plaintiff nor his attorneys shall seek any additional award of attorneys' fees or costs from Defendant for Plaintiff's fees and costs in this Lawsuit, other than what is provided in this Agreement. Plaintiff further acknowledges and agrees that he would not be entitled to receive the Settlement Amount if he did not make the promises that he is making in this Agreement.

**2.**      **Representations by Plaintiff**. Plaintiff represents, warrants, and agrees that he has been fully compensated for all work and is not entitled to any additional compensation. Plaintiff further represents, warrants, and agrees that the Settlement Amount compensates him in full and is an accord and satisfaction for all overtime wages, liquidated damages, attorneys' fees, and costs allegedly owed to him, if any, by Defendant and the Released Parties under the Fair Labor Standards Act and that Plaintiff is not due any additional compensation from Defendant or the Released Parties under the Fair Labor Standards Act. Plaintiff agrees that he waives, releases and discharges Defendant and the Released Parties from all claims under the Fair Labor Standards Act which he may have through the date of his signature below.

**3.**      **Stipulation of Dismissal.** The Parties agree that, through their attorneys, they shall promptly sign and file with the Court a Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice to dismiss the claims asserted by the Plaintiff against Defendant in the Lawsuit, in the form attached as <u>Exhibit A</u>. The Parties further agree that they will take all other procedural steps necessary to (a) obtain Court approval of the Agreement and the settlement if necessary; and (b) obtain a dismissal of Plaintiff's claims with prejudice.

**4.**      **Timing of Payments**. The two checks for the Settlement Amount will be delivered to Josephson Dunlap LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046, Attn: William Liles within ten (10) business days of the occurrence of the later of the following mandatory events: (1) the Agreement is fully executed by Plaintiff; (2) Plaintiff and Josephson Dunlap LLP provide

2

*Execution Version*

Form W-9s to Defendant; and (3) the Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, in the form attached as <u>Exhibit A</u> to this Agreement, is entered and granted by the Court, or the Plaintiff's claims against Defendant in the Lawsuit are otherwise dismissed with prejudice by the Court.

**5.** **General Release of Claims by Plaintiff.** Plaintiff, on his own behalf, and on behalf of all and each of his agents, attorneys, representatives, heirs, executors, administrators, and assigns (collectively, the "Plaintiff Releasors"), knowingly and voluntarily waives and releases Defendant and its parents, affiliates, subsidiaries, divisions, insurers, predecessors, successors, assigns, and current and former employees, attorneys, investors, officers, directors, partners, administrators, benefit plans, and agents (the "Released Parties") from any and all claims, known and unknown, that the Plaintiff Releasors have or may have against the Released Parties as of the date of execution of the Agreement arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties. This release is comprehensive and includes any claim that the Plaintiff Releasors could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, prior to Plaintiff's execution of this Agreement and arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties. This release is intended to be as comprehensive as can be conceived and the law will allow, and includes but is not limited to a release of and from any and all actions, causes of actions, liabilities, suits, debts, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever, under contract, tort or quasi-contract, state or federal, at law or in equity, whether based on federal, state or local statute, common law, or any other source, whether known or unknown, asserted or unasserted, suspected or unsuspected, that the Plaintiff Releasors could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, prior to Plaintiff's execution of this Agreement and arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties. This waiver, release and discharge includes, but is not limited to:

a.    claims based on any express or implied contract, or other agreement or representation relating to the terms and conditions of Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties, which may have been alleged to exist between Plaintiff and the Released Parties (or any of them), and claims that Defendant violated any personnel policies, handbooks, or any covenant of good faith and fair dealing;

b.    claims based on any state or federal laws prohibiting employment discrimination such as, without limitation, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, Section 1981 of the Civil Rights Act of 1866, the Americans with Disabilities Act, the Fair Labor Standards Act (including all claims under this Lawsuit), the Family and Medical Leave Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Rehabilitation Act, the Occupational Health and Safety Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Health Insurance and Portability Accountability Act of 1996 ("HIPAA"), the Genetic Information Non-Discrimination Act, the Texas Commission on Human

3

92044339v.2

Rights Act, the Texas Labor Code (other than any claim for workers' compensation benefits), and any and similar federal, state or local laws and regulations;

c.      claims for personal injury, harm, or other damages (whether intentional or unintentional) including, without limitation, negligence, defamation, misrepresentation, fraud, intentional or negligent infliction of emotional distress and/or mental anguish, assault, battery, invasion of privacy, negligent hiring, training, supervision and/or retention, tortious interference with contract, detrimental reliance, promissory estoppel, and loss of consortium to the Plaintiff Releasors or any member of each or all of their families or their significant others, and other such claims;

d.      claims growing out of any legal restrictions on Defendant's right to terminate employees and/or independent contractors; and

e.      claims for wages, back pay, overtime wages, severance pay, future pay, bonuses, any other alleged compensation, past and future employee retirement, health and welfare benefits, and any other employee benefits, including, without limitation, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. and any other state, federal, or local law or regulation.

Except for the Protected Disclosures/Actions as set forth below, Plaintiff Releasors agree not to file or become a party to a lawsuit to assert any such claims released by this Agreement.  If the Plaintiff Releasors breach this Agreement by suing any of the Released Parties, the Plaintiff Releasors understand and agree that the Released Parties will be able to apply for and receive an injunction to restrain any violation of this Section 5 and Plaintiff Releasors further agree that the Plaintiff Releasors will be required to pay the Released Parties' legal costs and expenses, including reasonable attorneys' fees, associated with defending against such lawsuit and enforcing this Agreement.

**6.      No Other Claims; Authority**.  By execution hereof, Plaintiff represents, covenants, and warrants that Plaintiff has no claims, lawsuits, or causes of action other than those described in the Lawsuit against Defendant, and that no claims released or waived herein have been previously conveyed, assigned, or transferred in any manner, in whole or in part, to any person, entity, or other third party. Plaintiff expressly represents that he is competent and authorized to release and/or waive the claims he may have against the Released Parties on any basis whatsoever.  To the extent any such claims are not capable of being waived or released, such claims are assigned to Defendant.

**7.      Breach of Agreement.**  Plaintiff acknowledges and understands that if he breaches any term of this Agreement that Defendant shall be entitled to injunctive relief for breaches of this Agreement, Defendant's attorneys' fees and costs associated with obtaining such relief, and any other legal or equitable remedies available to Defendant.

4

92044339v.2

*Execution Version*

8.    **Interpretation.**  Should any court of competent jurisdiction declare any provision of this Agreement be unenforceable, all other provisions of this Agreement shall not be affected and will remain enforceable.  The Parties agree that they have fully negotiated the terms of this Agreement and that its terms, provisions, and conditions shall not be interpreted or construed against either Party.

9.    **No Admission of Wrongdoing.**    The Parties enter into this Agreement expressly acknowledging that Defendant and the other Released Parties are disavowing fault, liability and wrongdoing, liability at all times having been denied.  Plaintiff recognizes that Defendant and the Released Parties are not admitting to, and specifically deny, any unlawful or wrongful conduct in connection with the allegations in the Lawsuit or otherwise.  Further, this Agreement or settlement is not evidence of any violation of, or noncompliance with, any statute or law by Defendant or any of the Released Parties.  This Agreement is made to avoid continued or future disputes and controversies that Plaintiff and the Released Parties may have with each other, to provide peace of mind to all Parties, and to eliminate and forego the nuisance of litigation and the financial costs of such litigation.

10.    **Amendment.**  This Agreement may not be modified except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

11.    **Governing Law.**  This Agreement will be governed by the substantive laws of the State of Texas without regard to conflicts of law principles.

12.    **Protected Disclosures/Actions.**  Despite any of the obligations stated in this Agreement, Plaintiff acknowledges and agrees that neither this Agreement nor any other agreement or policy of Defendant shall prevent Plaintiff from participating in the "Protected Disclosures/Actions" discussed below, including providing information to or filing a report, charge or complaint, including a challenge to the validity of this Agreement, with the Equal Employment Opportunity Commission ("EEOC"), Department of Labor ("DOL"), National Labor Relations Board ("NLRB"), Securities and Exchange Commission ("SEC") or any other governmental agency, from participating in any investigation or proceeding conducted by any governmental agency, or from any other protected whistleblower disclosure or action.  Plaintiff understands that this Agreement does not impose any condition precedent (such as prior notice to Defendant), any penalty, or any other restriction or limitation adversely affecting Plaintiff's rights regarding any governmental agency disclosure, report, claim or investigation.  Plaintiff acknowledges and agrees that he has waived in this Agreement any right to recover any monetary relief or other personal remedies in any proceeding or investigation by a governmental agency or any other other action brought against the Released Parties by the Plaintiff Releasors or on their behalf.  However, Plaintiff understands this Agreement does not limit Plaintiff's right to receive an award for information provided under any SEC program.

5

92044339v.2

*Execution Version*

**13.** **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between the Parties and supersedes any prior oral or written agreements or understandings between them regarding the Lawsuit. This Agreement may be executed in one or more counterparts, all of which together shall constitute one Agreement, and each of which separately shall constitute an original document. This Agreement is contractual, mutual, not a mere recital, and is a full and final settlement of any and all claims that Plaintiff or any Plaintiff Releasor might have against the Released Parties, jointly or severally, relating to the claims in the Lawsuit, any claims arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties, and all other claims arising on or before the date of Plaintiff's signature on this Agreement, and shall be binding on Plaintiff's heirs, assigns, and personal representatives and all other Plaintiff Releasors.

**14.** **Time To Negotiate and Consider This Agreement.** In addition to having the opportunity to negotiate this Agreement through Plaintiff's attorneys representing him in this Lawsuit, before signing it, Plaintiff has been advised to consult with, and has in fact consulted with, his attorneys to obtain advice about his rights and obligations under this Agreement. Each Party represents that they have individually, carefully read this Agreement and find that it has been written in language that they understand.

**15.** **Enforcement Actions.** This Settlement Agreement is fully enforceable in the U.S. District Court for the District of Colorado before the Honorable R. Brooke Jackson or such judge as may be designated in his stead by the procedures of the Court, who shall retain jurisdiction to enforce this Agreement.

**PLAINTIFF UNDERSTANDS THAT ONCE HE AND DEFENDANT SIGN BELOW, THIS DOCUMENT WILL BECOME A LEGALLY ENFORCEABLE AGREEMENT UNDER WHICH PLAINTIFF WILL BE GIVING UP RIGHTS AND CLAIMS HE MAY HAVE, ON THE TERMS STATED IN THIS AGREEMENT.**

[Signatures to follow]

92044339v.2

*Execution Version*

Agreed to and executed on this___ day of _____ 2021.


Signature: _____
Printed Name: _____
**William Evans**


Agreed to and executed on this 25th day of __May_____ 2021.


Signature: *Matthew M. Hinson*
Printed Name: __Matthew M. Hinson__
Tile: __VP, Southern Delaware Assets__
**WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC**

7

*Execution Version*

Agreed to and executed on this 27 day of _____May_____ 2021.


Signature: _____
Printed Name: _____
**William Evans**


Agreed to and executed on this___ day of _____ 2021.



Signature: _____
Printed Name: _____
Tile: _____
**WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC**

92044339v.2

*Execution Version*

# Exhibit A

8

*Execution Version*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WILLIAM EVANS,

Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

v.                                                          Civil Action No. 1:19-cv-02204-RBJ

FELIX ENERGY HOLDINGS II, LLC.,

      Defendant.

---

### JOINT MOTION FOR APPROVAL OF SETTLEMENT
### AND STIPULATION OF DISMISSAL WITH PREJUDICE

---

Plaintiff William Evans, and opt-in plaintiffs Shawn Best, Arthur Tredemeyer, and Michael Simmons, (collectively, "Plaintiffs"), and Defendant Felix Energy Holdings II, LLC n/k/a WPX Energy Permian, LLC[1] ("Defendant," and together with Plaintiffs, the "Parties"), file this Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, asking the Court to approve the Parties' Settlement Agreements (the "Agreements"). The Parties represent that the settlement is fair and equitable. Should the court approve the settlement, then pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, the Parties stipulate to the dismissal of this case with prejudice, with the Parties to bear their own respective attorneys' fees and court costs.

---

[1] In accordance with Section 18-209 of the Delaware Limited Liability Company Act, Felix Energy Holdings II, LLC merged into WPX Energy Permian, LLC, with WPX Energy Permian, LLC being the surviving entity, effective as of June 1, 2020 (prior to the date Plaintiff filed the Original Complaint). *See* DEL. CODE. ANN. TIT. 6, § 18-209.

9

92044339v.2

*Execution Version*

# I.  FACTUAL BACKGROUND

On August 2, 2019, Plaintiff William Evans brought this suit alleging that he and other similarly situated individuals were misclassified as independent contractors and not paid overtime in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201, *et seq*. [**Dkt. 1**]. [2] Defendant answered this suit on October 25, 2019 [**Dkt. 15**], denying all allegations and liability, denying that the matter should proceed as a collective action, and asserting that Plaintiffs were correctly classified as independent contractors not subject to overtime compensation under the FLSA.

The parties stipulated to conditional certification under the FLSA [**Dkt. 39**]. Following stipulation, opt-in plaintiffs Shawn Best, Arthur Tredemeyer, and Michael Simmons filed consents to join the case [**Dkt. 43, 50, and 51**]. No other Plaintiffs have filed a consent to join this case.

Despite the Parties' ongoing dispute regarding the validity of Plaintiffs' claims and Defendant's defenses, the Parties have entered into the Agreements to bring the Lawsuit to an expeditious conclusion.  The Parties respectfully request that the Agreements be approved and the Lawsuit dismissed with prejudice.

# II.  SETTLEMENT TERMS

In this case, the Parties mutually agree that there exists a bona fide dispute as to Defendant's liability, if any, Plaintiffs' classification as independent contractors, and the compensation due, if any.  As a result of the litigation efforts expended in this case by the Parties, and in order to avoid a potentially costly and lengthy trial setting, the Plaintiffs and Defendant

---

[2] Plaintiff Evans subsequently filed an amended complaint on January 15, 2020 to name the correct defendant.  [Dkt. 36].

10

*Execution Version*

have reached a private settlement of all claims, defenses and disputes between them in this cause. Copies of the Agreements entered into by the Parties are filed as attachments to this Motion. During negotiation, and at the time of execution, Plaintiffs had the benefit of the undersigned legal counsel, and were aware of their rights under the FLSA, 29 U.S.C. § 206 *et seq.* By entering into this settlement, Defendant is not admitting any liability or violation of the FLSA, which are specifically denied.

The terms of the settlement have been approved by Plaintiffs, Plaintiffs' counsel, Defendant, and Defendant's counsel. In arriving at the proposed settlement, the Parties considered (i) liability disputes; (ii) whether Plaintiffs are entitled to liquidated damages; (iii) whether Defendant acted willfully and the appropriate statute of limitations; (iv) the correct method for calculating damages, if any, (v) the disputed amount of overtime hours allegedly worked, (vi) the disputed amount of overtime wages allegedly owed, (vii) the likelihood of Plaintiffs' success on their claims, and (viii) other factual and legal issues. The settlement was negotiated at arms' length with the assistance of experienced counsel in this field. The settlement amount includes both estimated unpaid overtime wages for Plaintiffs, liquidated damages, and Plaintiffs' attorneys' fees. The terms of the settlement, including the amount of alleged unpaid wages, liquidated damages and attorneys' fees, are fair, reasonable, and in the best interest of the Parties. See *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1116 (D. Colo. 2017) (recognizing the "increased autonomy" plaintiffs possess in collective actions to determine what constitutes an appropriate settlement agreement).

*Execution Version*

### III.  <u>ARGUMENTS AND AUTHORITIES</u>

Courts have historically scrutinized FLSA settlements for fairness before approving the settlement. *Schulte v. Gangi*, 328 U.S. 108, 113, n.8 (1946); *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts . . . have held that such approval is not necessary." *Id.* (collecting cases).

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Deesv. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

The Agreements represent a fair compromise of several bona fide disputes concerning the legality of Defendant's compensation and classification practices with respect to the Plaintiffs.

92044339v.2

### 1. Description of the nature of the dispute.

This lawsuit alleges that Defendant misclassified Plaintiffs as independent contractors and did not pay Plaintiffs overtime in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201, et seq.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA is a broad remedial statute and it promotes a "great public policy" for the benefit of all workers within its reach. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

Here, the Parties dispute whether Defendant ever exerted sufficient control and authority over the Plaintiffs to render them employees under the FLSA. On the one hand, Plaintiffs allege they worked almost exclusively on Defendant's projects, and were generally subject to Defendant's control. On the other hand, Defendant denies the basis for Plaintiffs' allegations, including that it hired or fired Plaintiffs, supervised or controlled Plaintiffs, set pay, determined hours, or otherwise exerted control over Plaintiff. And, moreover, Defendant maintains that Plaintiffs were the employees of third party companies hired by Defendant to perform specific and highly skilled tasks for Defendant. The list of disagreements is meaningful and reflects the existence of a bona fide dispute (or several) concerning the employee status of the workers.

While both Parties were steadfast in their respective positions, the inherent risks of liability or no liability motivated the Parties to resolve their differences. The product of this careful analysis is the reasonable Agreements before this Court.

*Execution Version*

Before reaching a compromise, the Parties expended considerable time debating the relevant legal issues, compiling/reviewing damage data, to the extent ascertainable, and working through issues relevant to the nature and scope of the release. The Parties also engaged in substantial negotiations to reach the compromise before this Court.

**2.  A description of the employer's business and the type of work performed by the employees.**

Defendant is an oil and natural gas exploration and production company. Plaintiffs worked for third-party mud engineering vendors hired by Defendant to perform tasks to further Defendant's exploration and production goals.

**3.  The employer's reason for disputing the employees' right to overtime.**

Defendant denied the allegations in the Lawsuit and asserted affirmative and other defenses, including that Plaintiffs were not employees of Defendant, and instead were independent contractors. Defendant contends that Plaintiffs were the employees of third-party vendors hired by Defendant to perform specific tasks in furtherance of its oil and natural gas exploration and production efforts. And, Defendant further denies that it failed to act in good faith.

**4.  The employees' justification for the disputed wage.**

Plaintiffs argued that the compensation they received as independent contractors failed to include overtime wages they were due under the FLSA. Plaintiffs also alleged that Defendant did not act in good faith in classifying Plaintiffs as contractors and that the pay practice at issue constituted a willful violation of the FLSA.

**5.  If the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wages.**

While the FLSA usually has a statute of limitation of two years, willful violations of

14

the FLSA extend that period, resulting in "an additional year's overtime pay." *Cox v.
Brookshire Grocery Co.*, 919 F.2d 354, 355 (5th Cir. 1990) (discussing 29 U.S.C. § 255).
Plaintiffs have the burden to prove a willful violation. *Id*. at 356. "Willful" is defined as
whether "the employer knew or showed reckless disregard for the matter of whether its conduct
was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

As with many FLSA independent contractor cases, the issue of damages—two-year v.
three-year—was hotly contested in this lawsuit. Defendant claimed that its compensation
practices were reasonable, based on established industry practices, and not in willful violation
of the FLSA. While Plaintiffs are confident that additional discovery would have vigorously
tested all Defendant's defenses, the threat of a summary judgment on willfulness could not be
ignored for purposes of reaching a settlement in this case.

Had Defendant succeeded on this defense, the claims of the Plaintiffs would have been
severely reduced.  Thus, the existence of a bona fide dispute on the third-year damages in this
case was meaningful and relevant to the Parties' settlement discussions.

The Parties also had other disagreements about the facts and the law, which impacted
settlement discussions and highlight the bona fide nature of the dispute. As an example, the
total hours worked by the Plaintiffs was a subject of disagreement. Neither Defendant nor the
Plaintiffs maintained accurate records of hours worked each week.  Plaintiff contends
Defendant was required to maintain record of Plaintiffs' hours.  Defendant disputes this
contention given Plaintiffs' status as independent contractors.  Defendant contends Plaintiffs
could not prove with any degree of specificity the amount of hours allegedly worked for
Defendant.

15

*Execution Version*

The Parties believe that the terms and conditions of the Agreements are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, the proposed Agreements were reached following the exchange of information and data and after extensive negotiations. Because of the various defenses asserted by Defendant and the possibility that Defendant may have successfully defeated or limited some or all of the Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

### III.    PRAYER

Wherefore, Plaintiffs and Defendant respectfully request that the Court approve the settlement and enter an agreed order of dismissal of this lawsuit and the claims of all Plaintiffs with prejudice, with each party to bear their own court costs and attorneys' fees in conformance with the foregoing stipulation.

*[signatures to follow]*

16

92044339v.2

*Execution Version*

Respectfully submitted,

| | |
|---|---|
| */s/ Draft* | */s/ Draft* |
| **Michael A. Josephsen** | **Sara C. Longtain** |
| **Andrew W. Dunlap** | LOCKE LORD LLP |
| **William R. Liles** | 600 Travis Street, Suite 2800 |
| JOSEPHSON DUNLAP LLP | Houston, Texas 77 002-3095 |
| 11 Greenway Plaza, Suite 3050 | Telephone: (713) 226-1346 |
| Houston, Texas 77046 | slongtain@lockelord.com |
| Telephone:  (713) 352-1100 | |
| Facsimile:   (713) 352-3300 | **Attorneys for Defendant** |
| mjosephson@mybackwages.com | |
| adunlap@mybackwages.com | |
| wliles@mybackwages.com | |
| | |
| **Richard J. (Rex) Burch** | |
| BRUCKNER BURCH, PLLC | |
| 8 Greenway Plaza, Suite 1500 | |
| Houston, Texas 77046 | |
| Telephone:  (713) 877-8788 | |
| Facsimile:   (713) 877-8065 | |
| rburch@brucknerburch.com | |
| | |
| **Attorneys for Plaintiffs** | |

92044339v.2

*Execution Version*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on _____ 2021, a true and correct copy of this document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure as follows:

       Michael A. Josephson
       mjosephson@mybackwages.com
       Andrew W. Dunlap
       adunlap@mybackwages.com
       William R. Liles
       wliles@mybackwages.com
       **JOSEPHSON DUNLAP**
       11 Greenway Plaza, Suite 3050
       Houston, Texas 77046

       Richard J. (Rex) Burch
       rburch@brucknetburch.com
       **BRUCKNER BURCH, PLLC**
       8 Greenway Plaza, Suite 1500
       Houston, Texas 77046

                 /s/ *Draft*_____
                 **Sara C. Longtain**

## <u>CERTIFICATE OF CONFERENCE</u>

       By my signature below, I certify that I conferred with Plaintiff's counsel, William Liles, regarding this Joint Motion. Mr. Liles informed me that he is in agreement with all terms and obligations of this Joint Motion.

                 /s/ *Draft*_____
                 **Sara C. Longtain**

92044339v.2

*Execution Version*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WILLIAM EVANS,
Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

v.                                     Civil Action No. 1:19-cv-02204-RBJ

FELIX ENERGY HOLDINGS II, LLC.,
      Defendant.

---

### ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE

---

Pending before this Court is the Parties' Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice ("Joint Motion"). The Court finds the Joint Motion is well taken and should be and hereby is **GRANTED** in all respects.

The Court approves the settlement, which disposes of all Plaintiffs' claims for unpaid overtime wages, liquidated damages, attorneys' fees, and costs. The Court hereby grants the Joint Motion and orders that this case is dismissed with prejudice, all claims of Plaintiffs are dismissed with prejudice, and each party will bear their own costs and attorneys' fees in conformance with the settlement and the foregoing Stipulation of Dismissal with Prejudice of Plaintiffs and Defendants.

Signed on this _____ day of _____, 2021.

_____

**HONORABLE JUDGE PRESIDING**

19

*Execution Version*

## <u>SETTLEMENT AGREEMENT & RELEASE</u>

This Settlement Agreement & Release ("Agreement") is entered into between Michael Simmons ("Plaintiff") and WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC ("Defendant"). Plaintiff and Defendant are each referred to individually as a "Party" and collectively as the "Parties."

**WHEREAS**, Plaintiff joined a lawsuit filed against Defendant in the United States District Court for Colorado, styled *William Evans, Individually and on Behalf of All Others Similarly Situated v. Felix Energy Holdings II, LLC*; Civil Action No. 1:19-cv-02204-RBJ (the "Lawsuit"), wherein Plaintiff claimed Defendant did not pay him, or similarly situated workers, overtime wages they were owed in alleged violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA");

**WHEREAS**, Defendant denies and continues to deny all claims by Plaintiff in the Lawsuit;

**WHEREAS**, the Parties, through their respective attorneys, have engaged in fact investigation in the Lawsuit and exchanged relevant documents, and concluded that it is in their mutual best interests to negotiate a settlement and compromise of the disputed issues, including without limitation Defendant's liability, if any, the number of hours worked per week by Plaintiff for Defendant, if any, the amount of compensation due to Plaintiff, if any, Plaintiff's status as an employee or independent contractor of Defendant, Plaintiff's exempt status, if any, the applicable statute of limitations, the applicable methodology for calculating potential overtime wage damages and other issues related to the claims in this Lawsuit, without Defendant admitting any liability of any kind or nature whatsoever; and

**WHEREAS**, as a result of such negotiations, the undersigned Parties have each determined independently, and after consultation with counsel of their respective choice, that it is desirable and beneficial for each of them to settle, compromise and resolve all claims and disputes in the Lawsuit in the manner and on the terms and conditions set forth herein.

**NOW, THEREFORE**, Plaintiff and Defendant hereby agree as follows:

1. <u>**Settlement Amount.**</u>

a.    In consideration for the promises made by and to Plaintiff in this Agreement, Defendant agrees to pay the total gross settlement amount of Seventeen Thousand One Hundred and Forty-Seven Dollars and Fifty-Nine Cents ($17,147.59) (the "Settlement Amount") to Plaintiff and his attorneys as set forth below.   The Settlement Amount shall be distributed as follows:

i.    Nine Thousand Five Hundred and Sixty-Seven Dollars and One Cent ($9,567.01) in a check made payable to Plaintiff.  An IRS Form 1099 will be issued to Plaintiff in the normal course of business.

1

*Execution Version*

ii.     Seven Thousand Five Hundred and Eighty Dollars and Fifty-Nine Cents ($7,580.59) in a check made payable to JOSEPHSON DUNLAP LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046 (EIN 82-5208727) representing the sum total of all attorneys' fees and costs to be paid for Plaintiff's attorneys' fees and costs of court in the Lawsuit.  IRS Forms 1099 will be issued to the JOSEPHSON DUNLAP LLP and to Plaintiff for this amount in the normal course of business.

b.     Plaintiff agrees to be fully responsible for any and all respective taxes on the payments set forth in Section 1 of this Agreement.  Plaintiff acknowledges that he has received, or may seek, independent legal advice concerning the taxability of the Settlement Amount, and that Plaintiff has not relied upon any advice from Defendant and/or its attorneys as to the allocation of the Settlement Amount for tax or any other purposes, or regarding tax withholding or the ultimate taxability of the Settlement Amount, whether pursuant to federal, state or local income tax statutes or otherwise.  Plaintiff agrees to release, defend, indemnify, and hold harmless Defendant and the other Released Parties (as defined below) for any taxes or tax penalties for which the Plaintiff may be liable regarding the payment made to Plaintiff under this Agreement. Plaintiff agrees that neither Plaintiff nor his attorneys shall seek any additional award of attorneys' fees or costs from Defendant for Plaintiff's fees and costs in this Lawsuit, other than what is provided in this Agreement.  Plaintiff further acknowledges and agrees that he would not be entitled to receive the Settlement Amount if he did not make the promises that he is making in this Agreement.

**2.     Representations by Plaintiff**.  Plaintiff represents, warrants, and agrees that he has been fully compensated for all work and is not entitled to any additional compensation.  Plaintiff further represents, warrants, and agrees that the Settlement Amount compensates him in full and is an accord and satisfaction for all overtime wages, liquidated damages, attorneys' fees, and costs allegedly owed to him, if any, by Defendant and the Released Parties under the Fair Labor Standards Act and that Plaintiff is not due any additional compensation from Defendant or the Released Parties under the Fair Labor Standards Act.  Plaintiff agrees that he waives, releases and discharges Defendant and the Released Parties from all claims under the Fair Labor Standards Act which he may have through the date of his signature below.

**3.     Stipulation of Dismissal.**  The Parties agree that, through their attorneys, they shall promptly sign and file with the Court a Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice to dismiss the claims asserted by the Plaintiff against Defendant in the Lawsuit, in the form attached as Exhibit A.  The Parties further agree that they will take all other procedural steps necessary to (a) obtain Court approval of the Agreement and the settlement if necessary; and (b) obtain a dismissal of Plaintiff's claims with prejudice.

**4.     Timing of Payments**. The two checks for the Settlement Amount will be delivered to JOSEPHSON DUNLAP LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046, Attn:  William Liles within ten (10) business days of the occurrence of the later of the following mandatory events: (1) the Agreement is fully executed by Plaintiff; (2) Plaintiff and JOSEPHSON DUNLAP LLP provide

2

*Execution Version*

Form W-9s to Defendant; and (3) the Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, in the form attached as <u>Exhibit A</u> to this Agreement, is entered and granted by the Court, or the Plaintiff's claims against Defendant in the Lawsuit are otherwise dismissed with prejudice by the Court.

**5.      General Release of Claims by Plaintiff.**  Plaintiff, on his own behalf, and on behalf of all and each of his agents, attorneys, representatives, heirs, executors, administrators, and assigns (collectively, the "Plaintiff Releasors"), knowingly and voluntarily waives and releases Defendant and its parents, affiliates, subsidiaries, divisions, insurers, predecessors, successors, assigns, and current and former employees, attorneys, investors, officers, directors, partners, administrators, benefit plans, and agents (the "Released Parties") from any and all claims, known and unknown, that the Plaintiff Releasors have or may have against the Released Parties as of the date of execution of the Agreement arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties.  This release is comprehensive and includes any claim that the Plaintiff Releasors could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, prior to Plaintiff's execution of this Agreement and arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties.  This release is intended to be as comprehensive as can be conceived and the law will allow, and includes but is not limited to a release of and from any and all actions, causes of actions, liabilities, suits, debts, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever, under contract, tort or quasi-contract, state or federal, at law or in equity, whether based on federal, state or local statute, common law, or any other source, whether known or unknown, asserted or unasserted, suspected or unsuspected, that the Plaintiff Releasors could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, prior to Plaintiff's execution of this Agreement and arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties.  This waiver, release and discharge includes, but is not limited to:

a.      claims based on any express or implied contract, or other agreement or representation relating to the terms and conditions of Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties, which may have been alleged to exist between Plaintiff and the Released Parties (or any of them), and claims that Defendant violated any personnel policies, handbooks, or any covenant of good faith and fair dealing;

b.      claims based on any state or federal laws prohibiting employment discrimination such as, without limitation, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, Section 1981 of the Civil Rights Act of 1866, the Americans with Disabilities Act, the Fair Labor Standards Act (including all claims under this Lawsuit), the Family and Medical Leave Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Rehabilitation Act, the Occupational Health and Safety Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Health Insurance and Portability Accountability Act of 1996 ("HIPAA"), the Genetic Information Non-Discrimination Act, the Texas Commission on Human

3

Rights Act, the Texas Labor Code (other than any claim for workers' compensation benefits), and any and similar federal, state or local laws and regulations;

c.    claims for personal injury, harm, or other damages (whether intentional or unintentional) including, without limitation, negligence, defamation, misrepresentation, fraud, intentional or negligent infliction of emotional distress and/or mental anguish, assault, battery, invasion of privacy, negligent hiring, training, supervision and/or retention, tortious interference with contract, detrimental reliance, promissory estoppel, and loss of consortium to the Plaintiff Releasors or any member of each or all of their families or their significant others, and other such claims;

d.    claims growing out of any legal restrictions on Defendant's right to terminate employees and/or independent contractors; and

e.    claims for wages, back pay, overtime wages, severance pay, future pay, bonuses, any other alleged compensation, past and future employee retirement, health and welfare benefits, and any other employee benefits, including, without limitation, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. and any other state, federal, or local law or regulation.

Except for the Protected Disclosures/Actions as set forth below, Plaintiff Releasors agree not to file or become a party to a lawsuit to assert any such claims released by this Agreement.  If the Plaintiff Releasors breach this Agreement by suing any of the Released Parties, the Plaintiff Releasors understand and agree that the Released Parties will be able to apply for and receive an injunction to restrain any violation of this Section 5 and Plaintiff Releasors further agree that the Plaintiff Releasors will be required to pay the Released Parties' legal costs and expenses, including reasonable attorneys' fees, associated with defending against such lawsuit and enforcing this Agreement.

**6.    No Other Claims; Authority**.  By execution hereof, Plaintiff represents, covenants, and warrants that Plaintiff has no claims, lawsuits, or causes of action other than those described in the Lawsuit against Defendant, and that no claims released or waived herein have been previously conveyed, assigned, or transferred in any manner, in whole or in part, to any person, entity, or other third party. Plaintiff expressly represents that he is competent and authorized to release and/or waive the claims he may have against the Released Parties on any basis whatsoever.  To the extent any such claims are not capable of being waived or released, such claims are assigned to Defendant.

**7.    Breach of Agreement.**  Plaintiff acknowledges and understands that if he breaches any term of this Agreement that Defendant shall be entitled to injunctive relief for breaches of this Agreement, Defendant's attorneys' fees and costs associated with obtaining such relief, and any other legal or equitable remedies available to Defendant.

4

*Execution Version*

**8.**    **Interpretation.**  Should any court of competent jurisdiction declare any provision of this Agreement be unenforceable, all other provisions of this Agreement shall not be affected and will remain enforceable.  The Parties agree that they have fully negotiated the terms of this Agreement and that its terms, provisions, and conditions shall not be interpreted or construed against either Party.

**9.**    **No Admission of Wrongdoing.**    The Parties enter into this Agreement expressly acknowledging that Defendant and the other Released Parties are disavowing fault, liability and wrongdoing, liability at all times having been denied.  Plaintiff recognizes that Defendant and the Released Parties are not admitting to, and specifically deny, any unlawful or wrongful conduct in connection with the allegations in the Lawsuit or otherwise.  Further, this Agreement or settlement is not evidence of any violation of, or noncompliance with, any statute or law by Defendant or any of the Released Parties.  This Agreement is made to avoid continued or future disputes and controversies that Plaintiff and the Released Parties may have with each other, to provide peace of mind to all Parties, and to eliminate and forego the nuisance of litigation and the financial costs of such litigation.

**10.**    **Amendment.**  This Agreement may not be modified except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

**11.**    **Governing Law.**  This Agreement will be governed by the substantive laws of the State of Texas without regard to conflicts of law principles.

**12.**    **Protected Disclosures/Actions.**  Despite any of the obligations stated in this Agreement, Plaintiff acknowledges and agrees that neither this Agreement nor any other agreement or policy of Defendant shall prevent Plaintiff from participating in the "Protected Disclosures/Actions" discussed below, including providing information to or filing a report, charge or complaint, including a challenge to the validity of this Agreement, with the Equal Employment Opportunity Commission ("EEOC"), Department of Labor ("DOL"), National Labor Relations Board ("NLRB"), Securities and Exchange Commission ("SEC") or any other governmental agency, from participating in any investigation or proceeding conducted by any governmental agency, or from any other protected whistleblower disclosure or action.  Plaintiff understands that this Agreement does not impose any condition precedent (such as prior notice to Defendant), any penalty, or any other restriction or limitation adversely affecting Plaintiff's rights regarding any governmental agency disclosure, report, claim or investigation.  Plaintiff acknowledges and agrees that he has waived in this Agreement any right to recover any monetary relief or other personal remedies in any proceeding or investigation by a governmental agency or any other other action brought against the Released Parties by the Plaintiff Releasors or on their behalf.  However, Plaintiff understands this Agreement does not limit Plaintiff's right to receive an award for information provided under any SEC program.

5

92184327v.1

*Execution Version*

**13.** __Entire Agreement.__  This Agreement sets forth the entire agreement and understanding between the Parties and supersedes any prior oral or written agreements or understandings between them regarding the Lawsuit.  This Agreement may be executed in one or more counterparts, all of which together shall constitute one Agreement, and each of which separately shall constitute an original document.  This Agreement is contractual, mutual, not a mere recital, and is a full and final settlement of any and all claims that Plaintiff or any Plaintiff Releasor might have against the Released Parties, jointly or severally, relating to the claims in the Lawsuit, any claims arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties, and all other claims arising on or before the date of Plaintiff's signature on this Agreement, and shall be binding on Plaintiff's heirs, assigns, and personal representatives and all other Plaintiff Releasors.

**14.** __Time To Negotiate and Consider This Agreement.__  In addition to having the opportunity to negotiate this Agreement through Plaintiff's attorneys representing him in this Lawsuit, before signing it, Plaintiff has been advised to consult with, and has in fact consulted with, his attorneys to obtain advice about his rights and obligations under this Agreement.  Each Party represents that they have individually, carefully read this Agreement and find that it has been written in language that they understand.

**15.** __Enforcement Actions.__ This Settlement Agreement is fully enforceable in the U.S. District Court for the District of Colorado before the Honorable R. Brooke Jackson or such judge as may be designated in his stead by the procedures of the Court, who shall retain jurisdiction to enforce this Agreement.

**PLAINTIFF UNDERSTANDS THAT ONCE HE AND DEFENDANT SIGN BELOW, THIS DOCUMENT WILL BECOME A LEGALLY ENFORCEABLE AGREEMENT UNDER WHICH PLAINTIFF WILL BE GIVING UP RIGHTS AND CLAIMS HE MAY HAVE, ON THE TERMS STATED IN THIS AGREEMENT.**

[Signatures to follow]

6

*Execution Version*

Agreed to and executed on this___ day of _____ 2021.

Signature: _____
Printed Name: _____
**Michael Simmons**

Agreed to and executed on this 25th day of ___May_____ 2021.

Signature: *Matthew M. Hinson*
Printed Name: Matthew M. Hinson
Tile: VP, Southern Delaware Assets
**WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC**

7

*Execution Version*

Agreed to and executed on this 5\_\_\_ day of May_____ 2021.

Signature: _____
Printed Name: _____
Micheal Simmons (May 25, 2021 00:19 CDT)
**Michael Simmons**

Agreed to and executed on this\_\_\_ day of _____ 2021.

Signature: _____
Printed Name: _____
Tile: _____
**WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC**

7

92184327v.1

*Execution Version*

# Exhibit A

92184327v.1

*Execution Version*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

WILLIAM EVANS,

Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

v.                                                                    Civil Action No. 1:19-cv-02204-RBJ

FELIX ENERGY HOLDINGS II, LLC.,

      Defendant.

---

### JOINT MOTION FOR APPROVAL OF SETTLEMENT
### AND STIPULATION OF DISMISSAL WITH PREJUDICE

---

Plaintiff William Evans, and opt-in plaintiffs Shawn Best, Arthur Tredemeyer, and Michael Simmons, (collectively, "Plaintiffs"), and Defendant Felix Energy Holdings II, LLC n/k/a WPX Energy Permian, LLC[1] ("Defendant," and together with Plaintiffs, the "Parties"), file this Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, asking the Court to approve the Parties' Settlement Agreements (the "Agreements"). The Parties represent that the settlement is fair and equitable. Should the court approve the settlement, then pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, the Parties stipulate to the dismissal of this case with prejudice, with the Parties to bear their own respective attorneys' fees and court costs.

---

[1] In accordance with Section 18-209 of the Delaware Limited Liability Company Act, Felix Energy Holdings II, LLC merged into WPX Energy Permian, LLC, with WPX Energy Permian, LLC being the surviving entity, effective as of June 1, 2020 (prior to the date Plaintiff filed the Original Complaint). *See* DEL. CODE. ANN. TIT. 6, § 18-209.

9

*Execution Version*

## I.    <u>FACTUAL BACKGROUND</u>

On August 2, 2019, Plaintiff William Evans brought this suit alleging that he and other similarly situated individuals were misclassified as independent contractors and not paid overtime in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201, *et seq*. [**Dkt. 1**]. [2] Defendant answered this suit on October 25, 2019 [**Dkt. 15**], denying all allegations and liability, denying that the matter should proceed as a collective action, and asserting that Plaintiffs were correctly classified as independent contractors not subject to overtime compensation under the FLSA.

The parties stipulated to conditional certification under the FLSA [**Dkt. 39**]. Following stipulation, opt-in plaintiffs Shawn Best, Arthur Tredemeyer, and Michael Simmons filed consents to join the case [**Dkt. 43, 50, and 51**]. No other Plaintiffs have filed a consent to join this case.

Despite the Parties' ongoing dispute regarding the validity of Plaintiffs' claims and Defendant's defenses, the Parties have entered into the Agreements to bring the Lawsuit to an expeditious conclusion.  The Parties respectfully request that the Agreements be approved and the Lawsuit dismissed with prejudice.

## II.    <u>SETTLEMENT TERMS</u>

In this case, the Parties mutually agree that there exists a bona fide dispute as to Defendant's liability, if any, Plaintiffs' classification as independent contractors, and the compensation due, if any.  As a result of the litigation efforts expended in this case by the Parties, and in order to avoid a potentially costly and lengthy trial setting, the Plaintiffs and Defendant

---

[2] Plaintiff Evans subsequently filed an amended complaint on January 15, 2020 to name the correct defendant.  [Dkt. 36].

92184327v.1

*Execution Version*

have reached a private settlement of all claims, defenses and disputes between them in this cause. Copies of the Agreements entered into by the Parties are filed as attachments to this Motion. During negotiation, and at the time of execution, Plaintiffs had the benefit of the undersigned legal counsel, and were aware of their rights under the FLSA, 29 U.S.C. § 206 *et seq.* By entering into this settlement, Defendant is not admitting any liability or violation of the FLSA, which are specifically denied.

The terms of the settlement have been approved by Plaintiffs, Plaintiffs' counsel, Defendant, and Defendant's counsel. In arriving at the proposed settlement, the Parties considered (i) liability disputes; (ii) whether Plaintiffs are entitled to liquidated damages; (iii) whether Defendant acted willfully and the appropriate statute of limitations; (iv) the correct method for calculating damages, if any, (v) the disputed amount of overtime hours allegedly worked, (vi) the disputed amount of overtime wages allegedly owed, (vii) the likelihood of Plaintiffs' success on their claims, and (viii) other factual and legal issues. The settlement was negotiated at arms' length with the assistance of experienced counsel in this field. The settlement amount includes both estimated unpaid overtime wages for Plaintiffs, liquidated damages, and Plaintiffs' attorneys' fees. The terms of the settlement, including the amount of alleged unpaid wages, liquidated damages and attorneys' fees, are fair, reasonable, and in the best interest of the Parties. See *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1116 (D. Colo. 2017) (recognizing the "increased autonomy" plaintiffs possess in collective actions to determine what constitutes an appropriate settlement agreement).

11

*Execution Version*

### III.    <u>ARGUMENTS AND AUTHORITIES</u>

Courts have historically scrutinized FLSA settlements for fairness before approving the settlement. *Schulte v. Gangi*, 328 U.S. 108, 113, n.8 (1946); *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts . . . have held that such approval is not necessary." *Id.* (collecting cases).

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Deesv. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

The Agreements represent a fair compromise of several bona fide disputes concerning the legality of Defendant's compensation and classification practices with respect to the Plaintiffs.

12

*Execution Version*

1. **Description of the nature of the dispute.**

This lawsuit alleges that Defendant misclassified Plaintiffs as independent contractors and did not pay Plaintiffs overtime in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201, et seq.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA is a broad remedial statute and it promotes a "great public policy" for the benefit of all workers within its reach. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

Here, the Parties dispute whether Defendant ever exerted sufficient control and authority over the Plaintiffs to render them employees under the FLSA. On the one hand, Plaintiffs allege they worked almost exclusively on Defendant's projects, and were generally subject to Defendant's control. On the other hand, Defendant denies the basis for Plaintiffs' allegations, including that it hired or fired Plaintiffs, supervised or controlled Plaintiffs, set pay, determined hours, or otherwise exerted control over Plaintiff. And, moreover, Defendant maintains that Plaintiffs were the employees of third party companies hired by Defendant to perform specific and highly skilled tasks for Defendant. The list of disagreements is meaningful and reflects the existence of a bona fide dispute (or several) concerning the employee status of the workers.

While both Parties were steadfast in their respective positions, the inherent risks of liability or no liability motivated the Parties to resolve their differences. The product of this careful analysis is the reasonable Agreements before this Court.

Before reaching a compromise, the Parties expended considerable time debating the relevant legal issues, compiling/reviewing damage data, to the extent ascertainable, and working through issues relevant to the nature and scope of the release. The Parties also engaged in substantial negotiations to reach the compromise before this Court.

**2.  A description of the employer's business and the type of work performed by the employees.**

Defendant is an oil and natural gas exploration and production company. Plaintiffs worked for third-party mud engineering vendors hired by Defendant to perform tasks to further Defendant's exploration and production goals.

**3.  The employer's reason for disputing the employees' right to overtime.**

Defendant denied the allegations in the Lawsuit and asserted affirmative and other defenses, including that Plaintiffs were not employees of Defendant, and instead were independent contractors. Defendant contends that Plaintiffs were the employees of third-party vendors hired by Defendant to perform specific tasks in furtherance of its oil and natural gas exploration and production efforts. And, Defendant further denies that it failed to act in good faith.

**4.  The employees' justification for the disputed wage.**

Plaintiffs argued that the compensation they received as independent contractors failed to include overtime wages they were due under the FLSA. Plaintiffs also alleged that Defendant did not act in good faith in classifying Plaintiffs as contractors and that the pay practice at issue constituted a willful violation of the FLSA.

**5.  If the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wages.**

While the FLSA usually has a statute of limitation of two years, willful violations of

14

the FLSA extend that period, resulting in "an additional year's overtime pay." *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 355 (5th Cir. 1990) (discussing 29 U.S.C. § 255). Plaintiffs have the burden to prove a willful violation. *Id.* at 356. "Willful" is defined as whether "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

As with many FLSA independent contractor cases, the issue of damages—two-year v. three-year—was hotly contested in this lawsuit. Defendant claimed that its compensation practices were reasonable, based on established industry practices, and not in willful violation of the FLSA. While Plaintiffs are confident that additional discovery would have vigorously tested all Defendant's defenses, the threat of a summary judgment on willfulness could not be ignored for purposes of reaching a settlement in this case.

Had Defendant succeeded on this defense, the claims of the Plaintiffs would have been severely reduced. Thus, the existence of a bona fide dispute on the third-year damages in this case was meaningful and relevant to the Parties' settlement discussions.

The Parties also had other disagreements about the facts and the law, which impacted settlement discussions and highlight the bona fide nature of the dispute. As an example, the total hours worked by the Plaintiffs was a subject of disagreement. Neither Defendant nor the Plaintiffs maintained accurate records of hours worked each week. Plaintiff contends Defendant was required to maintain record of Plaintiffs' hours. Defendant disputes this contention given Plaintiffs' status as independent contractors. Defendant contends Plaintiffs could not prove with any degree of specificity the amount of hours allegedly worked for Defendant.

15

*Execution Version*

The Parties believe that the terms and conditions of the Agreements are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, the proposed Agreements were reached following the exchange of information and data and after extensive negotiations. Because of the various defenses asserted by Defendant and the possibility that Defendant may have successfully defeated or limited some or all of the Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

### III.    <u>PRAYER</u>

Wherefore, Plaintiffs and Defendant respectfully request that the Court approve the settlement and enter an agreed order of dismissal of this lawsuit and the claims of all Plaintiffs with prejudice, with each party to bear their own court costs and attorneys' fees in conformance with the foregoing stipulation.

[*signatures to follow*]

16

92184327v.1

*Execution Version*

Respectfully submitted,

*/s/ Draft*

**Michael A. Josephsen**
**Andrew W. Dunlap**
**William R. Liles**
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:  (713) 352-1100
Facsimile:  (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
wliles@mybackwages.com

**Richard J. (Rex) Burch**
BRUCKNER BURCH, PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:  (713) 877-8788
Facsimile:  (713) 877-8065
rburch@brucknerburch.com

**Attorneys for Plaintiffs**

*/s/ Draft*

**Sara C. Longtain**
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, Texas 77 002-3095
Telephone: (713) 226-1346
slongtain@lockelord.com

**Attorneys for Defendant**

17

*Execution Version*

## CERTIFICATE OF SERVICE

I hereby certify that on _____ 2021, a true and correct copy of this document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure as follows:

Michael A. Josephson
mjosephson@mybackwages.com
Andrew W. Dunlap
adunlap@mybackwages.com
William R. Liles
wliles@mybackwages.com
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046

Richard J. (Rex) Burch
rburch@brucknetburch.com
BRUCKNER BURCH, PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

/s/ Draft
**Sara C. Longtain**

## CERTIFICATE OF CONFERENCE

By my signature below, I certify that I conferred with Plaintiff's counsel, William Liles, regarding this Joint Motion. Mr. Liles informed me that he is in agreement with all terms and obligations of this Joint Motion.

/s/ Draft
**Sara C. Longtain**

18

92184327v.1

*Execution Version*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WILLIAM EVANS,
Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

v.                                                                    Civil Action No. 1:19-cv-02204-RBJ

FELIX ENERGY HOLDINGS II, LLC.,
      Defendant.

---

### ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT
### AND STIPULATION OF DISMISSAL WITH PREJUDICE

---

Pending before this Court is the Parties' Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice ("Joint Motion"). The Court finds the Joint Motion is well taken and should be and hereby is **GRANTED** in all respects.

The Court approves the settlement, which disposes of all Plaintiffs' claims for unpaid overtime wages, liquidated damages, attorneys' fees, and costs. The Court hereby grants the Joint Motion and orders that this case is dismissed with prejudice, all claims of Plaintiffs are dismissed with prejudice, and each party will bear their own costs and attorneys' fees in conformance with the settlement and the foregoing Stipulation of Dismissal with Prejudice of Plaintiffs and Defendants.

Signed on this _____ day of _____, 2021.

_____
**HONORABLE JUDGE PRESIDING**

19

92184327v.1

*Execution Version*

## <u>SETTLEMENT AGREEMENT & RELEASE</u>

This Settlement Agreement & Release ("Agreement") is entered into between Shawn Best ("Plaintiff") and WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC ("Defendant"). Plaintiff and Defendant are each referred to individually as a "Party" and collectively as the "Parties."

**WHEREAS**, Plaintiff joined a lawsuit filed against Defendant in the United States District Court for Colorado, styled *William Evans, Individually and on Behalf of All Others Similarly Situated v. Felix Energy Holdings II, LLC*; Civil Action No. 1:19-cv-02204-RBJ (the "Lawsuit"), wherein Plaintiff claimed Defendant did not pay him, or similarly situated workers, overtime wages they were owed in alleged violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA");

**WHEREAS**, Defendant denies and continues to deny all claims by Plaintiff in the Lawsuit;

**WHEREAS**, the Parties, through their respective attorneys, have engaged in fact investigation in the Lawsuit and exchanged relevant documents, and concluded that it is in their mutual best interests to negotiate a settlement and compromise of the disputed issues, including without limitation Defendant's liability, if any, the number of hours worked per week by Plaintiff for Defendant, if any, the amount of compensation due to Plaintiff, if any, Plaintiff's status as an employee or independent contractor of Defendant, Plaintiff's exempt status, if any, the applicable statute of limitations, the applicable methodology for calculating potential overtime wage damages and other issues related to the claims in this Lawsuit, without Defendant admitting any liability of any kind or nature whatsoever; and

**WHEREAS**, as a result of such negotiations, the undersigned Parties have each determined independently, and after consultation with counsel of their respective choice, that it is desirable and beneficial for each of them to settle, compromise and resolve all claims and disputes in the Lawsuit in the manner and on the terms and conditions set forth herein.

**NOW, THEREFORE**, Plaintiff and Defendant hereby agree as follows:

1. **<u>Settlement Amount.</u>**

   a. In consideration for the promises made by and to Plaintiff in this Agreement, Defendant agrees to pay the total gross settlement amount of Three Thousand Seven Hundred and Thirty-Seven Dollars and Thirty Cents ($3,737.30) (the "Settlement Amount") to Plaintiff and his attorneys as set forth below. The Settlement Amount shall be distributed as follows:

      i. Two Thousand and Eighty-Five Dollars and Twelve Cents ($2,085.12) in a check made payable to Plaintiff. An IRS Form 1099 will be issued to Plaintiff in the normal course of business.

1

*Execution Version*

        ii.       One Thousand Six Hundred and Fifty-Two Dollars and Eighteen Cents ($1,652.18) in a check made payable to JOSEPHSON DUNLAP LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046 (EIN 82-5208727) representing the sum total of all attorneys' fees and costs to be paid for Plaintiff's attorneys' fees and costs of court in the Lawsuit. IRS Forms 1099 will be issued to the JOSEPHSON DUNLAP LLP and to Plaintiff for this amount in the normal course of business.

       b.     Plaintiff agrees to be fully responsible for any and all respective taxes on the payments set forth in Section 1 of this Agreement. Plaintiff acknowledges that he has received, or may seek, independent legal advice concerning the taxability of the Settlement Amount, and that Plaintiff has not relied upon any advice from Defendant and/or its attorneys as to the allocation of the Settlement Amount for tax or any other purposes, or regarding tax withholding or the ultimate taxability of the Settlement Amount, whether pursuant to federal, state or local income tax statutes or otherwise. Plaintiff agrees to release, defend, indemnify, and hold harmless Defendant and the other Released Parties (as defined below) for any taxes or tax penalties for which the Plaintiff may be liable regarding the payment made to Plaintiff under this Agreement. Plaintiff agrees that neither Plaintiff nor his attorneys shall seek any additional award of attorneys' fees or costs from Defendant for Plaintiff's fees and costs in this Lawsuit, other than what is provided in this Agreement. Plaintiff further acknowledges and agrees that he would not be entitled to receive the Settlement Amount if he did not make the promises that he is making in this Agreement.

**2.**    <u>**Representations by Plaintiff**</u>. Plaintiff represents, warrants, and agrees that he has been fully compensated for all work and is not entitled to any additional compensation. Plaintiff further represents, warrants, and agrees that the Settlement Amount compensates him in full and is an accord and satisfaction for all overtime wages, liquidated damages, attorneys' fees, and costs allegedly owed to him, if any, by Defendant and the Released Parties under the Fair Labor Standards Act and that Plaintiff is not due any additional compensation from Defendant or the Released Parties under the Fair Labor Standards Act. Plaintiff agrees that he waives, releases and discharges Defendant and the Released Parties from all claims under the Fair Labor Standards Act which he may have through the date of his signature below.

**3.**    <u>**Stipulation of Dismissal**</u>. The Parties agree that, through their attorneys, they shall promptly sign and file with the Court a Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice to dismiss the claims asserted by the Plaintiff against Defendant in the Lawsuit, in the form attached as <u>Exhibit A</u>. The Parties further agree that they will take all other procedural steps necessary to (a) obtain Court approval of the Agreement and the settlement if necessary; and (b) obtain a dismissal of Plaintiff's claims with prejudice.

**4.**    <u>**Timing of Payments**</u>. The two checks for the Settlement Amount will be delivered to JOSEPHSON DUNLAP LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046, Attn: William Liles within ten (10) business days of the occurrence of the later of the following mandatory events: (1) the Agreement is fully executed by Plaintiff; (2) Plaintiff and JOSEPHSON DUNLAP LLP provide

*Execution Version*

Form W-9s to Defendant; and (3) the Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, in the form attached as <u>Exhibit A</u> to this Agreement, is entered and granted by the Court, or the Plaintiff's claims against Defendant in the Lawsuit are otherwise dismissed with prejudice by the Court.

**5.** **General Release of Claims by Plaintiff.** Plaintiff, on his own behalf, and on behalf of all and each of his agents, attorneys, representatives, heirs, executors, administrators, and assigns (collectively, the "Plaintiff Releasors"), knowingly and voluntarily waives and releases Defendant and its parents, affiliates, subsidiaries, divisions, insurers, predecessors, successors, assigns, and current and former employees, attorneys, investors, officers, directors, partners, administrators, benefit plans, and agents (the "Released Parties") from any and all claims, known and unknown, that the Plaintiff Releasors have or may have against the Released Parties as of the date of execution of the Agreement arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties. This release is comprehensive and includes any claim that the Plaintiff Releasors could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, prior to Plaintiff's execution of this Agreement and arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties. This release is intended to be as comprehensive as can be conceived and the law will allow, and includes but is not limited to a release of and from any and all actions, causes of actions, liabilities, suits, debts, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever, under contract, tort or quasi-contract, state or federal, at law or in equity, whether based on federal, state or local statute, common law, or any other source, whether known or unknown, asserted or unasserted, suspected or unsuspected, that the Plaintiff Releasors could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, prior to Plaintiff's execution of this Agreement and arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties. This waiver, release and discharge includes, but is not limited to:

a.      claims based on any express or implied contract, or other agreement or representation relating to the terms and conditions of Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties, which may have been alleged to exist between Plaintiff and the Released Parties (or any of them), and claims that Defendant violated any personnel policies, handbooks, or any covenant of good faith and fair dealing;

b.      claims based on any state or federal laws prohibiting employment discrimination such as, without limitation, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, Section 1981 of the Civil Rights Act of 1866, the Americans with Disabilities Act, the Fair Labor Standards Act (including all claims under this Lawsuit), the Family and Medical Leave Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Rehabilitation Act, the Occupational Health and Safety Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Health Insurance and Portability Accountability Act of 1996 ("HIPAA"), the Genetic Information Non-Discrimination Act, the Texas Commission on Human

3

*Execution Version*

Rights Act, the Texas Labor Code (other than any claim for workers' compensation benefits), and any and similar federal, state or local laws and regulations;

c.      claims for personal injury, harm, or other damages (whether intentional or unintentional) including, without limitation, negligence, defamation, misrepresentation, fraud, intentional or negligent infliction of emotional distress and/or mental anguish, assault, battery, invasion of privacy, negligent hiring, training, supervision and/or retention, tortious interference with contract, detrimental reliance, promissory estoppel, and loss of consortium to the Plaintiff Releasors or any member of each or all of their families or their significant others, and other such claims;

d.      claims growing out of any legal restrictions on Defendant's right to terminate employees and/or independent contractors; and

e.      claims for wages, back pay, overtime wages, severance pay, future pay, bonuses, any other alleged compensation, past and future employee retirement, health and welfare benefits, and any other employee benefits, including, without limitation, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. and any other state, federal, or local law or regulation.

Except for the Protected Disclosures/Actions as set forth below, Plaintiff Releasors agree not to file or become a party to a lawsuit to assert any such claims released by this Agreement.  If the Plaintiff Releasors breach this Agreement by suing any of the Released Parties, the Plaintiff Releasors understand and agree that the Released Parties will be able to apply for and receive an injunction to restrain any violation of this Section 5 and Plaintiff Releasors further agree that the Plaintiff Releasors will be required to pay the Released Parties' legal costs and expenses, including reasonable attorneys' fees, associated with defending against such lawsuit and enforcing this Agreement.

**6.**      **No Other Claims; Authority**.  By execution hereof, Plaintiff represents, covenants, and warrants that Plaintiff has no claims, lawsuits, or causes of action other than those described in the Lawsuit against Defendant, and that no claims released or waived herein have been previously conveyed, assigned, or transferred in any manner, in whole or in part, to any person, entity, or other third party. Plaintiff expressly represents that he is competent and authorized to release and/or waive the claims he may have against the Released Parties on any basis whatsoever.  To the extent any such claims are not capable of being waived or released, such claims are assigned to Defendant.

**7.**      **Breach of Agreement.**  Plaintiff acknowledges and understands that if he breaches any term of this Agreement that Defendant shall be entitled to injunctive relief for breaches of this Agreement, Defendant's attorneys' fees and costs associated with obtaining such relief, and any other legal or equitable remedies available to Defendant.

4

*Execution Version*

**8.    Interpretation.**  Should any court of competent jurisdiction declare any provision of this Agreement be unenforceable, all other provisions of this Agreement shall not be affected and will remain enforceable.  The Parties agree that they have fully negotiated the terms of this Agreement and that its terms, provisions, and conditions shall not be interpreted or construed against either Party.

**9.    No Admission of Wrongdoing.**    The Parties enter into this Agreement expressly acknowledging that Defendant and the other Released Parties are disavowing fault, liability and wrongdoing, liability at all times having been denied.  Plaintiff recognizes that Defendant and the Released Parties are not admitting to, and specifically deny, any unlawful or wrongful conduct in connection with the allegations in the Lawsuit or otherwise.  Further, this Agreement or settlement is not evidence of any violation of, or noncompliance with, any statute or law by Defendant or any of the Released Parties.  This Agreement is made to avoid continued or future disputes and controversies that Plaintiff and the Released Parties may have with each other, to provide peace of mind to all Parties, and to eliminate and forego the nuisance of litigation and the financial costs of such litigation.

**10.    Amendment.**  This Agreement may not be modified except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

**11.    Governing Law.**  This Agreement will be governed by the substantive laws of the State of Texas without regard to conflicts of law principles.

**12.    Protected Disclosures/Actions.**  Despite any of the obligations stated in this Agreement, Plaintiff acknowledges and agrees that neither this Agreement nor any other agreement or policy of Defendant shall prevent Plaintiff from participating in the "Protected Disclosures/Actions" discussed below, including providing information to or filing a report, charge or complaint, including a challenge to the validity of this Agreement, with the Equal Employment Opportunity Commission ("EEOC"), Department of Labor ("DOL"), National Labor Relations Board ("NLRB"), Securities and Exchange Commission ("SEC") or any other governmental agency, from participating in any investigation or proceeding conducted by any governmental agency, or from any other protected whistleblower disclosure or action.  Plaintiff understands that this Agreement does not impose any condition precedent (such as prior notice to Defendant), any penalty, or any other restriction or limitation adversely affecting Plaintiff's rights regarding any governmental agency disclosure, report, claim or investigation.  Plaintiff acknowledges and agrees that he has waived in this Agreement any right to recover any monetary relief or other personal remedies in any proceeding or investigation by a governmental agency or any other other action brought against the Released Parties by the Plaintiff Releasors or on their behalf.  However, Plaintiff understands this Agreement does not limit Plaintiff's right to receive an award for information provided under any SEC program.

5

*Execution Version*

13.    <u>**Entire Agreement.**</u>   This Agreement sets forth the entire agreement and understanding between the Parties and supersedes any prior oral or written agreements or understandings between them regarding the Lawsuit.  This Agreement may be executed in one or more counterparts, all of which together shall constitute one Agreement, and each of which separately shall constitute an original document.  This Agreement is contractual, mutual, not a mere recital, and is a full and final settlement of any and all claims that Plaintiff or any Plaintiff Releasor might have against the Released Parties, jointly or severally, relating to the claims in the Lawsuit, any claims arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties, and all other claims arising on or before the date of Plaintiff's signature on this Agreement, and shall be binding on Plaintiff's heirs, assigns, and personal representatives and all other Plaintiff Releasors.

14.    <u>**Time To Negotiate and Consider This Agreement.**</u>   In addition to having the opportunity to negotiate this Agreement through Plaintiff's attorneys representing him in this Lawsuit, before signing it, Plaintiff has been advised to consult with, and has in fact consulted with, his attorneys to obtain advice about his rights and obligations under this Agreement.  Each Party represents that they have individually, carefully read this Agreement and find that it has been written in language that they understand.

15.    <u>**Enforcement Actions.**</u> This Settlement Agreement is fully enforceable in the U.S. District Court for the District of Colorado before the Honorable R. Brooke Jackson or such judge as may be designated in his stead by the procedures of the Court, who shall retain jurisdiction to enforce this Agreement.

**PLAINTIFF UNDERSTANDS THAT ONCE HE AND DEFENDANT SIGN BELOW, THIS DOCUMENT WILL BECOME A LEGALLY ENFORCEABLE AGREEMENT UNDER WHICH PLAINTIFF WILL BE GIVING UP RIGHTS AND CLAIMS HE MAY HAVE, ON THE TERMS STATED IN THIS AGREEMENT.**

[Signatures to follow]

6

*Execution Version*

Agreed to and executed on this___ day of _____ 2021.

Signature: _____
Printed Name: _____
**Shawn Best**

Agreed to and executed on this 25th day of __May_____ 2021.

Signature: *Matthew M. Hinson*
Printed Name: Matthew M. Hinson
Tile: VP, Southern Delaware Assets
**WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC**

7

*Execution Version*

Agreed to and executed on this 25 day of MAY 2021.

Signature: *Shawn M Best*
Shawn M Best (May 25, 2021 07:40 EDT)
Printed Name: Shawn M Best
**Shawn Best**

Agreed to and executed on this___ day of _____ 2021.

Signature: _____
Printed Name: _____
Tile: _____
**WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC**

7

92184288v.1

*Execution Version*

# Exhibit A

*Execution Version*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WILLIAM EVANS,

Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

v.

FELIX ENERGY HOLDINGS II, LLC.,

      Defendant.

Civil Action No. 1:19-cv-02204-RBJ

---

### JOINT MOTION FOR APPROVAL OF SETTLEMENT
### AND STIPULATION OF DISMISSAL WITH PREJUDICE

---

Plaintiff William Evans, and opt-in plaintiffs Shawn Best, Arthur Tredemeyer, and Michael Simmons, (collectively, "Plaintiffs"), and Defendant Felix Energy Holdings II, LLC n/k/a WPX Energy Permian, LLC[1] ("Defendant," and together with Plaintiffs, the "Parties"), file this Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, asking the Court to approve the Parties' Settlement Agreements (the "Agreements"). The Parties represent that the settlement is fair and equitable. Should the court approve the settlement, then pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, the Parties stipulate to the dismissal of this case with prejudice, with the Parties to bear their own respective attorneys' fees and court costs.

---

[1] In accordance with Section 18-209 of the Delaware Limited Liability Company Act, Felix Energy Holdings II, LLC merged into WPX Energy Permian, LLC, with WPX Energy Permian, LLC being the surviving entity, effective as of June 1, 2020 (prior to the date Plaintiff filed the Original Complaint). *See* DEL. CODE. ANN. TIT. 6, § 18-209.

9

*Execution Version*

## I.    <u>FACTUAL BACKGROUND</u>

On August 2, 2019, Plaintiff William Evans brought this suit alleging that he and other similarly situated individuals were misclassified as independent contractors and not paid overtime in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201, *et seq*. [**Dkt. 1**]. [2] Defendant answered this suit on October 25, 2019 [**Dkt. 15**], denying all allegations and liability, denying that the matter should proceed as a collective action, and asserting that Plaintiffs were correctly classified as independent contractors not subject to overtime compensation under the FLSA.

The parties stipulated to conditional certification under the FLSA [**Dkt. 39**]. Following stipulation, opt-in plaintiffs Shawn Best, Arthur Tredemeyer, and Michael Simmons filed consents to join the case [**Dkt. 43, 50, and 51**]. No other Plaintiffs have filed a consent to join this case.

Despite the Parties' ongoing dispute regarding the validity of Plaintiffs' claims and Defendant's defenses, the Parties have entered into the Agreements to bring the Lawsuit to an expeditious conclusion.  The Parties respectfully request that the Agreements be approved and the Lawsuit dismissed with prejudice.

## II.    <u>SETTLEMENT TERMS</u>

In this case, the Parties mutually agree that there exists a bona fide dispute as to Defendant's liability, if any, Plaintiffs' classification as independent contractors, and the compensation due, if any.  As a result of the litigation efforts expended in this case by the Parties, and in order to avoid a potentially costly and lengthy trial setting, the Plaintiffs and Defendant

---

[2] Plaintiff Evans subsequently filed an amended complaint on January 15, 2020 to name the correct defendant.  [Dkt. 36].

have reached a private settlement of all claims, defenses and disputes between them in this cause. Copies of the Agreements entered into by the Parties are filed as attachments to this Motion. During negotiation, and at the time of execution, Plaintiffs had the benefit of the undersigned legal counsel, and were aware of their rights under the FLSA, 29 U.S.C. § 206 *et seq.* By entering into this settlement, Defendant is not admitting any liability or violation of the FLSA, which are specifically denied.

The terms of the settlement have been approved by Plaintiffs, Plaintiffs' counsel, Defendant, and Defendant's counsel. In arriving at the proposed settlement, the Parties considered (i) liability disputes; (ii) whether Plaintiffs are entitled to liquidated damages; (iii) whether Defendant acted willfully and the appropriate statute of limitations; (iv) the correct method for calculating damages, if any, (v) the disputed amount of overtime hours allegedly worked, (vi) the disputed amount of overtime wages allegedly owed, (vii) the likelihood of Plaintiffs' success on their claims, and (viii) other factual and legal issues. The settlement was negotiated at arms' length with the assistance of experienced counsel in this field. The settlement amount includes both estimated unpaid overtime wages for Plaintiffs, liquidated damages, and Plaintiffs' attorneys' fees. The terms of the settlement, including the amount of alleged unpaid wages, liquidated damages and attorneys' fees, are fair, reasonable, and in the best interest of the Parties. See *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1116 (D. Colo. 2017) (recognizing the "increased autonomy" plaintiffs possess in collective actions to determine what constitutes an appropriate settlement agreement).

*Execution Version*

## III. <u>ARGUMENTS AND AUTHORITIES</u>

Courts have historically scrutinized FLSA settlements for fairness before approving the settlement. *Schulte v. Gangi*, 328 U.S. 108, 113, n.8 (1946); *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts . . . have held that such approval is not necessary." *Id.* (collecting cases).

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Deesv. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

The Agreements represent a fair compromise of several bona fide disputes concerning the legality of Defendant's compensation and classification practices with respect to the Plaintiffs.

12

### 1. Description of the nature of the dispute.

This lawsuit alleges that Defendant misclassified Plaintiffs as independent contractors and did not pay Plaintiffs overtime in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201, et seq.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA is a broad remedial statute and it promotes a "great public policy" for the benefit of all workers within its reach. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

Here, the Parties dispute whether Defendant ever exerted sufficient control and authority over the Plaintiffs to render them employees under the FLSA. On the one hand, Plaintiffs allege they worked almost exclusively on Defendant's projects, and were generally subject to Defendant's control. On the other hand, Defendant denies the basis for Plaintiffs' allegations, including that it hired or fired Plaintiffs, supervised or controlled Plaintiffs, set pay, determined hours, or otherwise exerted control over Plaintiff. And, moreover, Defendant maintains that Plaintiffs were the employees of third party companies hired by Defendant to perform specific and highly skilled tasks for Defendant. The list of disagreements is meaningful and reflects the existence of a bona fide dispute (or several) concerning the employee status of the workers.

While both Parties were steadfast in their respective positions, the inherent risks of liability or no liability motivated the Parties to resolve their differences. The product of this careful analysis is the reasonable Agreements before this Court.

*Execution Version*

Before reaching a compromise, the Parties expended considerable time debating the relevant legal issues, compiling/reviewing damage data, to the extent ascertainable, and working through issues relevant to the nature and scope of the release. The Parties also engaged in substantial negotiations to reach the compromise before this Court.

**2. A description of the employer's business and the type of work performed by the employees.**

Defendant is an oil and natural gas exploration and production company. Plaintiffs worked for third-party mud engineering vendors hired by Defendant to perform tasks to further Defendant's exploration and production goals.

**3. The employer's reason for disputing the employees' right to overtime.**

Defendant denied the allegations in the Lawsuit and asserted affirmative and other defenses, including that Plaintiffs were not employees of Defendant, and instead were independent contractors. Defendant contends that Plaintiffs were the employees of third-party vendors hired by Defendant to perform specific tasks in furtherance of its oil and natural gas exploration and production efforts. And, Defendant further denies that it failed to act in good faith.

**4. The employees' justification for the disputed wage.**

Plaintiffs argued that the compensation they received as independent contractors failed to include overtime wages they were due under the FLSA. Plaintiffs also alleged that Defendant did not act in good faith in classifying Plaintiffs as contractors and that the pay practice at issue constituted a willful violation of the FLSA.

**5. If the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wages.**

While the FLSA usually has a statute of limitation of two years, willful violations of

14

the FLSA extend that period, resulting in "an additional year's overtime pay." *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 355 (5th Cir. 1990) (discussing 29 U.S.C. § 255). Plaintiffs have the burden to prove a willful violation. *Id.* at 356. "Willful" is defined as whether "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

As with many FLSA independent contractor cases, the issue of damages—two-year v. three-year—was hotly contested in this lawsuit. Defendant claimed that its compensation practices were reasonable, based on established industry practices, and not in willful violation of the FLSA. While Plaintiffs are confident that additional discovery would have vigorously tested all Defendant's defenses, the threat of a summary judgment on willfulness could not be ignored for purposes of reaching a settlement in this case.

Had Defendant succeeded on this defense, the claims of the Plaintiffs would have been severely reduced. Thus, the existence of a bona fide dispute on the third-year damages in this case was meaningful and relevant to the Parties' settlement discussions.

The Parties also had other disagreements about the facts and the law, which impacted settlement discussions and highlight the bona fide nature of the dispute. As an example, the total hours worked by the Plaintiffs was a subject of disagreement. Neither Defendant nor the Plaintiffs maintained accurate records of hours worked each week. Plaintiff contends Defendant was required to maintain record of Plaintiffs' hours. Defendant disputes this contention given Plaintiffs' status as independent contractors. Defendant contends Plaintiffs could not prove with any degree of specificity the amount of hours allegedly worked for Defendant.

*Execution Version*

The Parties believe that the terms and conditions of the Agreements are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, the proposed Agreements were reached following the exchange of information and data and after extensive negotiations. Because of the various defenses asserted by Defendant and the possibility that Defendant may have successfully defeated or limited some or all of the Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

### III.    PRAYER

Wherefore, Plaintiffs and Defendant respectfully request that the Court approve the settlement and enter an agreed order of dismissal of this lawsuit and the claims of all Plaintiffs with prejudice, with each party to bear their own court costs and attorneys' fees in conformance with the foregoing stipulation.

*[signatures to follow]*

16

92184288v.1

*Execution Version*

Respectfully submitted,

| | |
|---|---|
| */s/ Draft* | */s/ Draft* |
| **Michael A. Josephsen** | **Sara C. Longtain** |
| **Andrew W. Dunlap** | Locke Lord LLP |
| **William R. Liles** | 600 Travis Street, Suite 2800 |
| Josephson Dunlap LLP | Houston, Texas 77 002-3095 |
| 11 Greenway Plaza, Suite 3050 | Telephone: (713) 226-1346 |
| Houston, Texas 77046 | slongtain@lockelord.com |
| Telephone: (713) 352-1100 | |
| Facsimile: (713) 352-3300 | **Attorneys for Defendant** |
| mjosephson@mybackwages.com | |
| adunlap@mybackwages.com | |
| wliles@mybackwages.com | |

**Richard J. (Rex) Burch**
Bruckner Burch, PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Facsimile: (713) 877-8065
rburch@brucknerburch.com

**Attorneys for Plaintiffs**

*Execution Version*

## CERTIFICATE OF SERVICE

I hereby certify that on _____ 2021, a true and correct copy of this document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure as follows:

Michael A. Josephson
mjosephson@mybackwages.com
Andrew W. Dunlap
adunlap@mybackwages.com
William R. Liles
wliles@mybackwages.com
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046

Richard J. (Rex) Burch
rburch@brucknetburch.com
BRUCKNER BURCH, PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

/s/ *Draft*_____
**Sara C. Longtain**

## CERTIFICATE OF CONFERENCE

By my signature below, I certify that I conferred with Plaintiff's counsel, William Liles, regarding this Joint Motion. Mr. Liles informed me that he is in agreement with all terms and obligations of this Joint Motion.

/s/ *Draft*_____
**Sara C. Longtain**

18

92184288v.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

WILLIAM EVANS,
Individually and on Behalf of
All Others Similarly Situated,

  Plaintiff,

v.            Civil Action No. 1:19-cv-02204-RBJ
FELIX ENERGY HOLDINGS II, LLC.,
  Defendant.

---

**ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT
AND STIPULATION OF DISMISSAL WITH PREJUDICE**

---

  Pending before this Court is the Parties' Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice ("Joint Motion"). The Court finds the Joint Motion is well taken and should be and hereby is **GRANTED** in all respects.

  The Court approves the settlement, which disposes of all Plaintiffs' claims for unpaid overtime wages, liquidated damages, attorneys' fees, and costs. The Court hereby grants the Joint Motion and orders that this case is dismissed with prejudice, all claims of Plaintiffs are dismissed with prejudice, and each party will bear their own costs and attorneys' fees in conformance with the settlement and the foregoing Stipulation of Dismissal with Prejudice of Plaintiffs and Defendants.

  Signed on this _____ day of _____, 2021.

_____
**HONORABLE JUDGE PRESIDING**

19

92184288v.1

*Execution Version*

## SETTLEMENT AGREEMENT & RELEASE

This Settlement Agreement & Release ("Agreement") is entered into between Arthur Tredemeyer ("Plaintiff") and WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC ("Defendant"). Plaintiff and Defendant are each referred to individually as a "Party" and collectively as the "Parties."

**WHEREAS**, Plaintiff joined a lawsuit filed against Defendant in the United States District Court for Colorado, styled *William Evans, Individually and on Behalf of All Others Similarly Situated v. Felix Energy Holdings II, LLC*; Civil Action No. 1:19-cv-02204-RBJ (the "Lawsuit"), wherein Plaintiff claimed Defendant did not pay him, or similarly situated workers, overtime wages they were owed in alleged violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA");

**WHEREAS**, Defendant denies and continues to deny all claims by Plaintiff in the Lawsuit;

**WHEREAS**, the Parties, through their respective attorneys, have engaged in fact investigation in the Lawsuit and exchanged relevant documents, and concluded that it is in their mutual best interests to negotiate a settlement and compromise of the disputed issues, including without limitation Defendant's liability, if any, the number of hours worked per week by Plaintiff for Defendant, if any, the amount of compensation due to Plaintiff, if any, Plaintiff's status as an employee or independent contractor of Defendant, Plaintiff's exempt status, if any, the applicable statute of limitations, the applicable methodology for calculating potential overtime wage damages and other issues related to the claims in this Lawsuit, without Defendant admitting any liability of any kind or nature whatsoever; and

**WHEREAS**, as a result of such negotiations, the undersigned Parties have each determined independently, and after consultation with counsel of their respective choice, that it is desirable and beneficial for each of them to settle, compromise and resolve all claims and disputes in the Lawsuit in the manner and on the terms and conditions set forth herein.

**NOW, THEREFORE**, Plaintiff and Defendant hereby agree as follows:

1. **Settlement Amount.**

   a.      In consideration for the promises made by and to Plaintiff in this Agreement, Defendant agrees to pay the total gross settlement amount of Nineteen Thousand Seven Hundred and Nineteen Dollars and Seventy-Three Cents ($19,719.73) (the "Settlement Amount") to Plaintiff and his attorneys as set forth below.    The Settlement Amount shall be distributed as follows:

   i.      Eleven Thousand and Two Dollars and Six Cents ($11,002.06) in a check made payable to Plaintiff.  An IRS Form 1099 will be issued to Plaintiff in the normal course of business.

1

*Execution Version*

      ii.          Eight Thousand Seven Hundred and Seventeen Dollars and Sixty-Seven Cents ($8,717.67) in a check made payable to JOSEPHSON DUNLAP LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046 (EIN 82-5208727) representing the sum total of all attorneys' fees and costs to be paid for Plaintiff's attorneys' fees and costs of court in the Lawsuit.  IRS Forms 1099 will be issued to the JOSEPHSON DUNLAP LLP and to Plaintiff for this amount in the normal course of business.

      b.     Plaintiff agrees to be fully responsible for any and all respective taxes on the payments set forth in Section 1 of this Agreement.  Plaintiff acknowledges that he has received, or may seek, independent legal advice concerning the taxability of the Settlement Amount, and that Plaintiff has not relied upon any advice from Defendant and/or its attorneys as to the allocation of the Settlement Amount for tax or any other purposes, or regarding tax withholding or the ultimate taxability of the Settlement Amount, whether pursuant to federal, state or local income tax statutes or otherwise.  Plaintiff agrees to release, defend, indemnify, and hold harmless Defendant and the other Released Parties (as defined below) for any taxes or tax penalties for which the Plaintiff may be liable regarding the payment made to Plaintiff under this Agreement. Plaintiff agrees that neither Plaintiff nor his attorneys shall seek any additional award of attorneys' fees or costs from Defendant for Plaintiff's fees and costs in this Lawsuit, other than what is provided in this Agreement.  Plaintiff further acknowledges and agrees that he would not be entitled to receive the Settlement Amount if he did not make the promises that he is making in this Agreement.

**2.**      <u>**Representations by Plaintiff**</u>.  Plaintiff represents, warrants, and agrees that he has been fully compensated for all work and is not entitled to any additional compensation.  Plaintiff further represents, warrants, and agrees that the Settlement Amount compensates him in full and is an accord and satisfaction for all overtime wages, liquidated damages, attorneys' fees, and costs allegedly owed to him, if any, by Defendant and the Released Parties under the Fair Labor Standards Act and that Plaintiff is not due any additional compensation from Defendant or the Released Parties under the Fair Labor Standards Act.  Plaintiff agrees that he waives, releases and discharges Defendant and the Released Parties from all claims under the Fair Labor Standards Act which he may have through the date of his signature below.

**3.**      <u>**Stipulation of Dismissal.**</u>  The Parties agree that, through their attorneys, they shall promptly sign and file with the Court a Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice to dismiss the claims asserted by the Plaintiff against Defendant in the Lawsuit, in the form attached as <u>Exhibit A</u>.  The Parties further agree that they will take all other procedural steps necessary to (a) obtain Court approval of the Agreement and the settlement if necessary; and (b) obtain a dismissal of Plaintiff's claims with prejudice.

**4.**      <u>**Timing of Payments**</u>. The two checks for the Settlement Amount will be delivered to JOSEPHSON DUNLAP LLP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046, Attn:  William Liles within ten (10) business days of the occurrence of the later of the following mandatory events: (1) the Agreement is fully executed by Plaintiff; (2) Plaintiff and JOSEPHSON DUNLAP LLP provide

*Execution Version*

Form W-9s to Defendant; and (3) the Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, in the form attached as <u>Exhibit A</u> to this Agreement, is entered and granted by the Court, or the Plaintiff's claims against Defendant in the Lawsuit are otherwise dismissed with prejudice by the Court.

**5.     General Release of Claims by Plaintiff.**  Plaintiff, on his own behalf, and on behalf of all and each of his agents, attorneys, representatives, heirs, executors, administrators, and assigns (collectively, the "Plaintiff Releasors"), knowingly and voluntarily waives and releases Defendant and its parents, affiliates, subsidiaries, divisions, insurers, predecessors, successors, assigns, and current and former employees, attorneys, investors, officers, directors, partners, administrators, benefit plans, and agents (the "Released Parties") from any and all claims, known and unknown, that the Plaintiff Releasors have or may have against the Released Parties as of the date of execution of the Agreement arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties.  This release is comprehensive and includes any claim that the Plaintiff Releasors could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, prior to Plaintiff's execution of this Agreement and arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties.  This release is intended to be as comprehensive as can be conceived and the law will allow, and includes but is not limited to a release of and from any and all actions, causes of actions, liabilities, suits, debts, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims and demands whatsoever, under contract, tort or quasi-contract, state or federal, at law or in equity, whether based on federal, state or local statute, common law, or any other source, whether known or unknown, asserted or unasserted, suspected or unsuspected, that the Plaintiff Releasors could assert against the Released Parties based upon acts or omissions that occurred, or that could be alleged to have occurred, prior to Plaintiff's execution of this Agreement and arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties.  This waiver, release and discharge includes, but is not limited to:

a.     claims based on any express or implied contract, or other agreement or representation relating to the terms and conditions of Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties, which may have been alleged to exist between Plaintiff and the Released Parties (or any of them), and claims that Defendant violated any personnel policies, handbooks, or any covenant of good faith and fair dealing;

b.     claims based on any state or federal laws prohibiting employment discrimination such as, without limitation, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, Section 1981 of the Civil Rights Act of 1866, the Americans with Disabilities Act, the Fair Labor Standards Act (including all claims under this Lawsuit), the Family and Medical Leave Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Rehabilitation Act, the Occupational Health and Safety Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Health Insurance and Portability Accountability Act of 1996 ("HIPAA"), the Genetic Information Non-Discrimination Act, the Texas Commission on Human

3

*Execution Version*

Rights Act, the Texas Labor Code (other than any claim for workers' compensation benefits), and any and similar federal, state or local laws and regulations;

      c.      claims for personal injury, harm, or other damages (whether intentional or unintentional) including, without limitation, negligence, defamation, misrepresentation, fraud, intentional or negligent infliction of emotional distress and/or mental anguish, assault, battery, invasion of privacy, negligent hiring, training, supervision and/or retention, tortious interference with contract, detrimental reliance, promissory estoppel, and loss of consortium to the Plaintiff Releasors or any member of each or all of their families or their significant others, and other such claims;

      d.      claims growing out of any legal restrictions on Defendant's right to terminate employees and/or independent contractors; and

      e.      claims for wages, back pay, overtime wages, severance pay, future pay, bonuses, any other alleged compensation, past and future employee retirement, health and welfare benefits, and any other employee benefits, including, without limitation, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. and any other state, federal, or local law or regulation.

      Except for the Protected Disclosures/Actions as set forth below, Plaintiff Releasors agree not to file or become a party to a lawsuit to assert any such claims released by this Agreement.  If the Plaintiff Releasors breach this Agreement by suing any of the Released Parties, the Plaintiff Releasors understand and agree that the Released Parties will be able to apply for and receive an injunction to restrain any violation of this Section 5 and Plaintiff Releasors further agree that the Plaintiff Releasors will be required to pay the Released Parties' legal costs and expenses, including reasonable attorneys' fees, associated with defending against such lawsuit and enforcing this Agreement.

**6.**      **No Other Claims; Authority**.  By execution hereof, Plaintiff represents, covenants, and warrants that Plaintiff has no claims, lawsuits, or causes of action other than those described in the Lawsuit against Defendant, and that no claims released or waived herein have been previously conveyed, assigned, or transferred in any manner, in whole or in part, to any person, entity, or other third party. Plaintiff expressly represents that he is competent and authorized to release and/or waive the claims he may have against the Released Parties on any basis whatsoever.  To the extent any such claims are not capable of being waived or released, such claims are assigned to Defendant.

**7.**      **Breach of Agreement.**  Plaintiff acknowledges and understands that if he breaches any term of this Agreement that Defendant shall be entitled to injunctive relief for breaches of this Agreement, Defendant's attorneys' fees and costs associated with obtaining such relief, and any other legal or equitable remedies available to Defendant.

92184108v.1

*Execution Version*

**8.     Interpretation.**  Should any court of competent jurisdiction declare any provision of this Agreement be unenforceable, all other provisions of this Agreement shall not be affected and will remain enforceable.  The Parties agree that they have fully negotiated the terms of this Agreement and that its terms, provisions, and conditions shall not be interpreted or construed against either Party.

**9.     No Admission of Wrongdoing.**     The Parties enter into this Agreement expressly acknowledging that Defendant and the other Released Parties are disavowing fault, liability and wrongdoing, liability at all times having been denied.  Plaintiff recognizes that Defendant and the Released Parties are not admitting to, and specifically deny, any unlawful or wrongful conduct in connection with the allegations in the Lawsuit or otherwise.  Further, this Agreement or settlement is not evidence of any violation of, or noncompliance with, any statute or law by Defendant or any of the Released Parties.  This Agreement is made to avoid continued or future disputes and controversies that Plaintiff and the Released Parties may have with each other, to provide peace of mind to all Parties, and to eliminate and forego the nuisance of litigation and the financial costs of such litigation.

**10.     Amendment.**  This Agreement may not be modified except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

**11.     Governing Law.**  This Agreement will be governed by the substantive laws of the State of Texas without regard to conflicts of law principles.

**12.     Protected Disclosures/Actions.**  Despite any of the obligations stated in this Agreement, Plaintiff acknowledges and agrees that neither this Agreement nor any other agreement or policy of Defendant shall prevent Plaintiff from participating in the "Protected Disclosures/Actions" discussed below, including providing information to or filing a report, charge or complaint, including a challenge to the validity of this Agreement, with the Equal Employment Opportunity Commission ("EEOC"), Department of Labor ("DOL"), National Labor Relations Board ("NLRB"), Securities and Exchange Commission ("SEC") or any other governmental agency, from participating in any investigation or proceeding conducted by any governmental agency, or from any other protected whistleblower disclosure or action.  Plaintiff understands that this Agreement does not impose any condition precedent (such as prior notice to Defendant), any penalty, or any other restriction or limitation adversely affecting Plaintiff's rights regarding any governmental agency disclosure, report, claim or investigation.  Plaintiff acknowledges and agrees that he has waived in this Agreement any right to recover any monetary relief or other personal remedies in any proceeding or investigation by a governmental agency or any other other action brought against the Released Parties by the Plaintiff Releasors or on their behalf.  However, Plaintiff understands this Agreement does not limit Plaintiff's right to receive an award for information provided under any SEC program.

5

*Execution Version*

13.    **Entire Agreement.**  This Agreement sets forth the entire agreement and understanding between the Parties and supersedes any prior oral or written agreements or understandings between them regarding the Lawsuit.  This Agreement may be executed in one or more counterparts, all of which together shall constitute one Agreement, and each of which separately shall constitute an original document.  This Agreement is contractual, mutual, not a mere recital, and is a full and final settlement of any and all claims that Plaintiff or any Plaintiff Releasor might have against the Released Parties, jointly or severally, relating to the claims in the Lawsuit, any claims arising from Plaintiff's services, alleged employment, and/or any other engagement for or with the Released Parties, and all other claims arising on or before the date of Plaintiff's signature on this Agreement, and shall be binding on Plaintiff's heirs, assigns, and personal representatives and all other Plaintiff Releasors.

14.    **Time To Negotiate and Consider This Agreement.**  In addition to having the opportunity to negotiate this Agreement through Plaintiff's attorneys representing him in this Lawsuit, before signing it, Plaintiff has been advised to consult with, and has in fact consulted with, his attorneys to obtain advice about his rights and obligations under this Agreement.  Each Party represents that they have individually, carefully read this Agreement and find that it has been written in language that they understand.

15.    **Enforcement Actions.** This Settlement Agreement is fully enforceable in the U.S. District Court for the District of Colorado before the Honorable R. Brooke Jackson or such judge as may be designated in his stead by the procedures of the Court, who shall retain jurisdiction to enforce this Agreement.

**PLAINTIFF UNDERSTANDS THAT ONCE HE AND DEFENDANT SIGN BELOW, THIS DOCUMENT WILL BECOME A LEGALLY ENFORCEABLE AGREEMENT UNDER WHICH PLAINTIFF WILL BE GIVING UP RIGHTS AND CLAIMS HE MAY HAVE, ON THE TERMS STATED IN THIS AGREEMENT.**

[Signatures to follow]

6

*Execution Version*

Agreed to and executed on this___ day of _____ 2021.


Signature: _____
Printed Name: _____
**Arthur Tredemeyer**


Agreed to and executed on this 25th day of  May_____ 2021.



Signature: _____
Printed Name:  Matthew M. Hinson_____
Tile:  VP, Southern Delaware Assets_____
**WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC**

7

*Execution Version*

Agreed to and executed on this 24 day of May_____ 2021.


Signature: _____
Printed Name: _____
Arthur W. Tredemeyer (May 24, 2021 21:26 CDT)
**Arthur Tredemeyer**


Agreed to and executed on this___ day of _____ 2021.



Signature: _____
Printed Name: _____
Tile: _____
**WPX Energy Permian, LLC f/k/a Felix Energy Holdings II, LLC**

7

92184108v.1

*Execution Version*

# Exhibit A

92184108v.1

*Execution Version*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WILLIAM EVANS,

Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

v.                                                   Civil Action No. 1:19-cv-02204-RBJ

FELIX ENERGY HOLDINGS II, LLC.,

      Defendant.

---

## JOINT MOTION FOR APPROVAL OF SETTLEMENT
## AND STIPULATION OF DISMISSAL WITH PREJUDICE

---

Plaintiff William Evans, and opt-in plaintiffs Shawn Best, Arthur Tredemeyer, and Michael Simmons, (collectively, "Plaintiffs"), and Defendant Felix Energy Holdings II, LLC n/k/a WPX Energy Permian, LLC[1] ("Defendant," and together with Plaintiffs, the "Parties"), file this Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice, asking the Court to approve the Parties' Settlement Agreements (the "Agreements"). The Parties represent that the settlement is fair and equitable. Should the court approve the settlement, then pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, the Parties stipulate to the dismissal of this case with prejudice, with the Parties to bear their own respective attorneys' fees and court costs.

---

[1] In accordance with Section 18-209 of the Delaware Limited Liability Company Act, Felix Energy Holdings II, LLC merged into WPX Energy Permian, LLC, with WPX Energy Permian, LLC being the surviving entity, effective as of June 1, 2020 (prior to the date Plaintiff filed the Original Complaint). *See* DEL. CODE. ANN. TIT. 6, § 18-209.

9

*Execution Version*

# I.    <u>FACTUAL BACKGROUND</u>

On August 2, 2019, Plaintiff William Evans brought this suit alleging that he and other similarly situated individuals were misclassified as independent contractors and not paid overtime in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201, *et seq*. [**Dkt. 1**]. [2] Defendant answered this suit on October 25, 2019 [**Dkt. 15**], denying all allegations and liability, denying that the matter should proceed as a collective action, and asserting that Plaintiffs were correctly classified as independent contractors not subject to overtime compensation under the FLSA.

The parties stipulated to conditional certification under the FLSA [**Dkt. 39**]. Following stipulation, opt-in plaintiffs Shawn Best, Arthur Tredemeyer, and Michael Simmons filed consents to join the case [**Dkt. 43, 50, and 51**]. No other Plaintiffs have filed a consent to join this case.

Despite the Parties' ongoing dispute regarding the validity of Plaintiffs' claims and Defendant's defenses, the Parties have entered into the Agreements to bring the Lawsuit to an expeditious conclusion. The Parties respectfully request that the Agreements be approved and the Lawsuit dismissed with prejudice.

# II.    <u>SETTLEMENT TERMS</u>

In this case, the Parties mutually agree that there exists a bona fide dispute as to Defendant's liability, if any, Plaintiffs' classification as independent contractors, and the compensation due, if any. As a result of the litigation efforts expended in this case by the Parties, and in order to avoid a potentially costly and lengthy trial setting, the Plaintiffs and Defendant

---

[2] Plaintiff Evans subsequently filed an amended complaint on January 15, 2020 to name the correct defendant. [Dkt. 36].

92184108v.1

*Execution Version*

have reached a private settlement of all claims, defenses and disputes between them in this cause. Copies of the Agreements entered into by the Parties are filed as attachments to this Motion. During negotiation, and at the time of execution, Plaintiffs had the benefit of the undersigned legal counsel, and were aware of their rights under the FLSA, 29 U.S.C. § 206 *et seq.* By entering into this settlement, Defendant is not admitting any liability or violation of the FLSA, which are specifically denied.

The terms of the settlement have been approved by Plaintiffs, Plaintiffs' counsel, Defendant, and Defendant's counsel. In arriving at the proposed settlement, the Parties considered (i) liability disputes; (ii) whether Plaintiffs are entitled to liquidated damages; (iii) whether Defendant acted willfully and the appropriate statute of limitations; (iv) the correct method for calculating damages, if any, (v) the disputed amount of overtime hours allegedly worked, (vi) the disputed amount of overtime wages allegedly owed, (vii) the likelihood of Plaintiffs' success on their claims, and (viii) other factual and legal issues. The settlement was negotiated at arms' length with the assistance of experienced counsel in this field. The settlement amount includes both estimated unpaid overtime wages for Plaintiffs, liquidated damages, and Plaintiffs' attorneys' fees. The terms of the settlement, including the amount of alleged unpaid wages, liquidated damages and attorneys' fees, are fair, reasonable, and in the best interest of the Parties. See *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1116 (D. Colo. 2017) (recognizing the "increased autonomy" plaintiffs possess in collective actions to determine what constitutes an appropriate settlement agreement).

11

*Execution Version*

## III.    **ARGUMENTS AND AUTHORITIES**

Courts have historically scrutinized FLSA settlements for fairness before approving the settlement. *Schulte v. Gangi*, 328 U.S. 108, 113, n.8 (1946); *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts . . . have held that such approval is not necessary." *Id.* (collecting cases).

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Deesv. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

The Agreements represent a fair compromise of several bona fide disputes concerning the legality of Defendant's compensation and classification practices with respect to the Plaintiffs.

12

*Execution Version*

## 1. Description of the nature of the dispute.

This lawsuit alleges that Defendant misclassified Plaintiffs as independent contractors and did not pay Plaintiffs overtime in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201, et seq.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA is a broad remedial statute and it promotes a "great public policy" for the benefit of all workers within its reach. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

Here, the Parties dispute whether Defendant ever exerted sufficient control and authority over the Plaintiffs to render them employees under the FLSA. On the one hand, Plaintiffs allege they worked almost exclusively on Defendant's projects, and were generally subject to Defendant's control. On the other hand, Defendant denies the basis for Plaintiffs' allegations, including that it hired or fired Plaintiffs, supervised or controlled Plaintiffs, set pay, determined hours, or otherwise exerted control over Plaintiff. And, moreover, Defendant maintains that Plaintiffs were the employees of third party companies hired by Defendant to perform specific and highly skilled tasks for Defendant. The list of disagreements is meaningful and reflects the existence of a bona fide dispute (or several) concerning the employee status of the workers.

While both Parties were steadfast in their respective positions, the inherent risks of liability or no liability motivated the Parties to resolve their differences. The product of this careful analysis is the reasonable Agreements before this Court.

13

*Execution Version*

Before reaching a compromise, the Parties expended considerable time debating the relevant legal issues, compiling/reviewing damage data, to the extent ascertainable, and working through issues relevant to the nature and scope of the release. The Parties also engaged in substantial negotiations to reach the compromise before this Court.

### 2. A description of the employer's business and the type of work performed by the employees.

Defendant is an oil and natural gas exploration and production company. Plaintiffs worked for third-party mud engineering vendors hired by Defendant to perform tasks to further Defendant's exploration and production goals.

### 3. The employer's reason for disputing the employees' right to overtime.

Defendant denied the allegations in the Lawsuit and asserted affirmative and other defenses, including that Plaintiffs were not employees of Defendant, and instead were independent contractors. Defendant contends that Plaintiffs were the employees of third-party vendors hired by Defendant to perform specific tasks in furtherance of its oil and natural gas exploration and production efforts. And, Defendant further denies that it failed to act in good faith.

### 4. The employees' justification for the disputed wage.

Plaintiffs argued that the compensation they received as independent contractors failed to include overtime wages they were due under the FLSA. Plaintiffs also alleged that Defendant did not act in good faith in classifying Plaintiffs as contractors and that the pay practice at issue constituted a willful violation of the FLSA.

### 5. If the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wages.

While the FLSA usually has a statute of limitation of two years, willful violations of

14

*Execution Version*

the FLSA extend that period, resulting in "an additional year's overtime pay." *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 355 (5th Cir. 1990) (discussing 29 U.S.C. § 255). Plaintiffs have the burden to prove a willful violation. *Id.* at 356. "Willful" is defined as whether "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

As with many FLSA independent contractor cases, the issue of damages—two-year v. three-year—was hotly contested in this lawsuit. Defendant claimed that its compensation practices were reasonable, based on established industry practices, and not in willful violation of the FLSA. While Plaintiffs are confident that additional discovery would have vigorously tested all Defendant's defenses, the threat of a summary judgment on willfulness could not be ignored for purposes of reaching a settlement in this case.

Had Defendant succeeded on this defense, the claims of the Plaintiffs would have been severely reduced. Thus, the existence of a bona fide dispute on the third-year damages in this case was meaningful and relevant to the Parties' settlement discussions.

The Parties also had other disagreements about the facts and the law, which impacted settlement discussions and highlight the bona fide nature of the dispute. As an example, the total hours worked by the Plaintiffs was a subject of disagreement. Neither Defendant nor the Plaintiffs maintained accurate records of hours worked each week. Plaintiff contends Defendant was required to maintain record of Plaintiffs' hours. Defendant disputes this contention given Plaintiffs' status as independent contractors. Defendant contends Plaintiffs could not prove with any degree of specificity the amount of hours allegedly worked for Defendant.

15

*Execution Version*

The Parties believe that the terms and conditions of the Agreements are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, the proposed Agreements were reached following the exchange of information and data and after extensive negotiations. Because of the various defenses asserted by Defendant and the possibility that Defendant may have successfully defeated or limited some or all of the Plaintiffs' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

### III.    **PRAYER**

Wherefore, Plaintiffs and Defendant respectfully request that the Court approve the settlement and enter an agreed order of dismissal of this lawsuit and the claims of all Plaintiffs with prejudice, with each party to bear their own court costs and attorneys' fees in conformance with the foregoing stipulation.

[*signatures to follow*]

16

*Execution Version*

Respectfully submitted,

| | |
|---|---|
| */s/ Draft* | */s/ Draft* |
| **Michael A. Josephsen** | **Sara C. Longtain** |
| **Andrew W. Dunlap** | LOCKE LORD LLP |
| **William R. Liles** | 600 Travis Street, Suite 2800 |
| JOSEPHSON DUNLAP LLP | Houston, Texas 77 002-3095 |
| 11 Greenway Plaza, Suite 3050 | Telephone: (713) 226-1346 |
| Houston, Texas 77046 | slongtain@lockelord.com |
| Telephone:  (713) 352-1100 | |
| Facsimile:  (713) 352-3300 | **Attorneys for Defendant** |
| mjosephson@mybackwages.com | |
| adunlap@mybackwages.com | |
| wliles@mybackwages.com | |

**Richard J. (Rex) Burch**
BRUCKNER BURCH, PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:  (713) 877-8788
Facsimile:  (713) 877-8065
rburch@brucknerburch.com

**Attorneys for Plaintiffs**

17

92184108v.1

*Execution Version*

## CERTIFICATE OF SERVICE

I hereby certify that on _____ 2021, a true and correct copy of this document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure as follows:

Michael A. Josephson
mjosephson@mybackwages.com
Andrew W. Dunlap
adunlap@mybackwages.com
William R. Liles
wliles@mybackwages.com
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046

Richard J. (Rex) Burch
rburch@brucknetburch.com
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

/s/ *Draft*
**Sara C. Longtain**

## CERTIFICATE OF CONFERENCE

By my signature below, I certify that I conferred with Plaintiff's counsel, William Liles, regarding this Joint Motion. Mr. Liles informed me that he is in agreement with all terms and obligations of this Joint Motion.

/s/ *Draft*
**Sara C. Longtain**

18

92184108v.1

*Execution Version*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

WILLIAM EVANS,
Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

v.                              Civil Action No. 1:19-cv-02204-RBJ

FELIX ENERGY HOLDINGS II, LLC.,
      Defendant.

---

### ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT
### AND STIPULATION OF DISMISSAL WITH PREJUDICE

---

Pending before this Court is the Parties' Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice ("Joint Motion"). The Court finds the Joint Motion is well taken and should be and hereby is **GRANTED** in all respects.

The Court approves the settlement, which disposes of all Plaintiffs' claims for unpaid overtime wages, liquidated damages, attorneys' fees, and costs. The Court hereby grants the Joint Motion and orders that this case is dismissed with prejudice, all claims of Plaintiffs are dismissed with prejudice, and each party will bear their own costs and attorneys' fees in conformance with the settlement and the foregoing Stipulation of Dismissal with Prejudice of Plaintiffs and Defendants.

Signed on this _____ day of _____, 2021.

_____

**HONORABLE JUDGE PRESIDING**

92184108v.1